FAYETTE GIBSON, *et al vs.* JAMES McCORMICK, Jr. *December,* 1838.

It is not necessary that a creditor's bill under the act of 1785, ch. 72, should provide for the coming in of the other creditors, to participate in the burdens and benefits of the suit. Without such a provision, it may be treated as a creditor's bill, in the decree and other proceedings founded upon it.

Where a mortgagee is made a defendant to a creditor's bill, filed for the sale of the mortgagor's equity of redemption, and other property, and assents to a sale of the mortgaged premises in his answer, the chancellor may decree the sale thereof for the payment of the mortgage debt—and in decreeing such sale, there is no necessity that time should be given the parties entitled to the equity of redemption, for the payment of the debt.

The act of 1782, ch. 72, sec. 3, only requires time to be given, when application to the chancellor to foreclose, is made by mortgagees, or their representatives.

In a bill filed for the sale of the real estate of a deceased debtor, it is sufficient to charge the continued existence of the complainant's debt, and the exhaustion of the debtor's personal estate. And to the passing of a decree for the sale of the real estate in such a case, a preliminary account of the disposition of the personalty by the executors, and of the debts remaining unpaid, need not be taken.

But even if such account would be directed, if the defendants in their answers had asked for it, their omission to do so, precludes them from objecting to the decree upon that ground, in the appellate court.

When a deceased debtor has devised his property to various persons, a decree for its sale for the payment of creditors, would be erroneous, if it directed payment by contribution, upon the share of each. The question of contri-

bution is one with which the complainant has no concern. It is interesting only to the defendants, after the claims of creditors have been definitively adjusted.

When a purchase is made of the devisee of a deceased debtor, the purchaser is bound to take notice of the existence of claims against, and the state of the personal assets of the deceased. He cannot defend his title upon the ground that he had no notice of debts, or the insufficiency of the personal estate to pay them.

Such a purchaser at private sale, from one of the devisees, cannot resist a decree for a sale, upon a bill filed by creditors, upon the ground that the money paid by him was applied to the payment of the claims of particular creditors. The creditors of the deceased have a right to insist, that the property of their debtor shall be offered at public sale, under the proper authority, though such a state of things should have influence with the trustee, in selecting such portions of the estate as it may be necessary to sell.

Upon the principle of substitution, the purchaser whose money has been so applied, or those claiming under him, will be subrogated to the rights of the creditors whose debts he has paid.

The devisees of mortgaged property have a right to call on the executor to redeem the mortgage, to the extent of the excess, where the personal property is more than sufficient for the payment of debts, but they have no such equity, as against the devisees of other portions of the estate.

If a complainant cannot obtain the specific relief for which he prays, he may obtain any relief consistent therewith, warranted by the allegations of his bill, under the prayer for general relief.

When a creditor in his bill charges the existence of, and non-payment of his claim; the exhaustion of the personal estate in the payment of debts, and exhibits an account passed by the orphans court, shewing the name of each creditor, and the amount paid him out of the personal assets, it is in effect the same as if the bill had charged, that the deceased had died indebted to each creditor, *nominatim*, the amount stated to have been paid them respectively, and that such payment had been made out of the personal assets of the deceased. Upon a bill so framed, and prayer for general relief, the complainant would be entitled to be substituted to the rights of the creditors so paid.

The right of substitution is not a matter of fact, which a party must allege to entitle him to its benefit, but a conclusion of law, or equity, to be drawn by the court from the statement of facts out of which it arises. Nor is it necessary that the bill should state, that the claims mentioned in the account are chargeable upon the real estate, to the extent of the insufficiency of the personalty; such being the inference of law from the act of 1785, ch. 72, unless rebutted by some plea or matter in avoidance.

If the allegations of the bill are admitted, or proved, or a decree passed, *pro confesso,* the result is the same, as regards the defendants who are *sui juris,* and a decree passes as of course, for the payment of the complainant's claim out of the real estate; he being substituted as against the realty, to the rights of the creditors whose claims have been satisfied out of his proportion of the personalty.

If a person indebted, devises his real estate to several, and the creditor releases the land of one of the devisees from the payment of its proportion, he cannot recover such proportion from the other devisees. The loss occasioned by such discharge must be borne by the creditor.

When a widow accepts of a devise in lieu of her legal right, she is considered as a purchaser for a fair consideration, and in decreeing a sale of the property for the payment of the testator's debts, it should be ordered to be made subject to the devise to the widow, unless it is shewn that the devise to her exceeds her common law right, and is therefore injurious, and unjust to creditors.

APPEAL from the Court of Chancery.

ON the 19th January, 1824, *James McCormick, Junior,* filed his bill in the court of Chancery, alleging that *Jacob Gibson,* late of Talbot county, deceased, being in his life-time seized and possessed of a very large estate, both real and personal, and being indebted unto the president, directors and company of the Farmers' Bank of Maryland, in the sum of $13,720, to secure the same on the 25th May, 1813, duly executed to them a mortgage " of all and singular those lands and tenements and premises whereon the said *Jacob Gibson* then resided, *being parts or parcels of several tracts of land, called* " *Bendon*"—-" *Champonham*"-—" *Todd upon Dorman*"—- *Edmondton*"-—" *Champonham's Addition*"-—" *Fontry*"— " *Bishop's Fields*"—" *Long Point,*" and "*Neglect,*" situate on St. Michael's river, and those lately resurveyed by the said *Jacob Gibson,* and reduced into one entire tract ; and those now called *Marengo,* according to the metes and bounds and contents expressed in the patent thereof, as per deed of mortgage exhibited with the bill ; that it did not appear by any release whether the said mortgage debt has been paid or satisfied ; that on the 18th October, 1817, the said *Jacob Gibson* gave his note for $2500, payable five months after date, to *Samuel Hughes,* which came to the complainant by various endorsements set forth in the bill ; that on the 29th November, 1817, the said *Jacob Gibson* made his last will and testament, which was filed with the bill as exhibit No. 3. The bill then alleged that the said *Jacob Gibson* left at his death the following issue: *Edward R. Gibson,* a resident of *Flo-*

*rida ; Fayette Gibson ; Ann,* the wife of *Joseph W. Reynolds ;* *Harriet,* the wife of *Thomas P. Bennett ; Frances,* the wife of *James Tilton,* a resident of Wilmington ; and the following grand-children : *Clara Tilton, Nehemiah Tilton,* and *Gibson Tilton,* the infant children of Mary Elizabeth, daughter of the testator, wife of James F. Tilton, who died in the life-time of her father, who are also non-residents ; that *Fayette Gibson* and *Rebecca Gibson* renounced the executorship of the said *Jacob's* estate, and that letters testamentary have been granted to *Edward R. Gibson ;* that on the 14th May, 1821, the said complainant instituted a suit against the administrator *d. b. n. c. t. a.* of *Jacob Gibson,* and recovered judgment for $2500, with interest from the 21st March, 1818, and costs, with an agreement that a payment made to complainant by the said *Edward R. Gibson,* on the 18th December, 1818, of $600, should be allowed, and that the said judgment should not subject the defendant to the payment of any larger sum than the plaintiff's legal dividend of assets, according to the due course of administration ; that on the 29th April, 1823, the said *Edward R. Gibson* settled his account with the orphans court of *Talbot* county, by which it appears that the whole of the personal estate of the said testator has been exhausted. And the said bill further alleged, that after the death of the said testator, *Jacob Gibson,* and after the crops of 1819 were finished as was provided for in his will, his devisees of full age, and the minors by their guardians, entered upon and took possession of the several tracts of land to them respec- tively devised, but without making any further provision for the debts of the testator ; that *Edward R. Gibson,* by deed bearing date on the 14th day of September, 1818, mortgaged to *James Tilton* and *Rigby Hopkins,* his securities on his testamentary bond, all those parts of a tract or parcel of land called "*Marengo,*" which had been devised to him ; and by deed bearing date 1st January, 1822, conveyed the same to *Fayette Gibson ;* and the said *Fayette Gibson,* by deed of 2d January, 1822, mortgaged the same to the said *Edward R. Gibson,* to secure the payment of the purchase money thereof,

as per exhibits Nos. 6, 7, 8 ; and that the said *Fayette Gibson,* by deed of 16th May, 1821, conveyed to *John Wilson Blake,* all and singular the following tracts of land : " *Batchelor's Branch*"——" *Batchelor's Branch Addition*"——" *Thief Keep Out*"——" *Bennett's Neglect*"——" *Bennett's Neglect Resur-veyed*"——part of " *Triangle,*" and so much of "*Hall's Range*" next adjoining thereto, as would make up the quantity of 100 acres of land, which have been devised to him by the said *Jacob Gibson ;* and that said *Blake,* on the 18th May, 1821, mortgaged the said lands to *Fayette Gibson,* to secure the payment of the purchase money.

And the said bill further alleged, that the said *Fayette Gib-son,* on the 24th October, 1821, conveyed to Colonel Edward Lloyd, all that part of " *Marengo,*" which had been devised to him by his father. Said deeds were exhibited and num-bered 9, 10, 11 ; that the lands devised by the said *Jacob Gibson,* to his children, grand-children and niece, *Nancy Gibson,* are of much greater value than the amount of com-plainant's debt ; that he has applied to the devisees for pay-ment ; that his debt is chargeable upon the testator's real estate, " for as much as his personal estate is insufficient for the payment of his debts," and that the said devisees refuse to come to any account with him, or to pay him. Prayed that *Edward R. Gibson, Fayette Gibson, Joseph W. Reynolds* and *Ann* his wife, *Thomas P. Bennett* and *Harriet* his wife, *James Tilton* and *Frances* his wife, *Clara Tilton, Nehemiah Tilton,* and *Nancy Gibson,* may be compelled to pay complainant in such proportions as to the chancellor shall seem just ; and in default thereof, that the real estate of which the testator died seized, or so much thereof as may be neces-sary for that purpose, may be sold for the payment thereof ; for other and farther relief, generally, and for subpœnas against *Fayette, Thomas P. Bennett and wife, Nancy and Rebecca Gibson, Rigby Hopkins, John W. Blake, Edward Lloyd, Joseph W. Reynolds* and *Ann* his wife, and the *Presi-dent and Directors of the Farmers' Bank of Maryland,* and for an order of publication against *Edward R. Gibson, James*

*Tilton* and *Frances* his wife, *Clara* and *Nehemiah Tilton*, non-residents.

Exhibit No. 1, filed with the bill, was the mortgage of 25th May, 1813, from Jacob Gibson to the Farmers' Bank of Maryland, to secure the payment of $13,720, with interest, on or before the 25th July, 1813, and all and every other or further sum which shall become justly due and owing from him to them at any time after the execution of the said mortgage, and before the expiration of six months from the date limited for payment thereof. This deed was acknowledged and recorded, but contained no relinquishment of dower from the wife of the grantor.

Exhibit No. 3, was the will of *Jacob Gibson*, by which he devised to *Edward R. Gibson*, and the heirs of his body for ever, so much of " my dwelling plantation as will be found to the southward or south-westward of five lines drawn as follows, &c.

I give to my son *Fayette Gibson*, and to the heirs of his body for ever, so much of the tract of land called *Marengo*, as will be found eastwardly and southwardly of the following lines, &c. *Also*, all that tract of land which I purchased of *Samuel Hughes* and *Daniel Hughes*, containing, &c. including 28 acres of Bennett's Kind Caution, which runs into the same.

I also give to my son, *Fayette Gibson*, all the woodland outside of my farthest gate, and northwardly and eastwardly of the public road, known by the name of *School House Lot* and *Garey's* Beginning.

I give and devise unto my daughter, *Frances Gibson*, the residue of *Marengo*, beginning, &c. in fee.

I give unto my daughter, *Ann Reynolds*, and to the heirs of her body for ever, in addition to what she has already received from me, *Sharp's Island*, together with all the property thereon. But if my son, *Edward R. Gibson*, chooses, he may take the said Island and property thereon, by paying to his sister, &c. the sum of $10,000, in five annual equal instalments, with interest on the same till paid."

The testator then bequeathed to Joseph W. Reynolds, to make up a sum of $15,000, a further sum of $1750, in case there should be a surplus after payment of debts, in the hands of his executors, and also, &c.

To Harriet Bennett, wife of Thomas P. Bennett, the testator devised the farm called Peach Blossom.

To his grand children, Clara Tilton and Nehemiah Tilton, the testator devised the tan-yard farm ; and also all that land purchased of *Samuel Y. Garey*, which he had not sold.

To his wife, Rebecca Gibson, the testator devised, " for and during the time she may remain my widow, and no longer, the use, occupation and enjoyment of one moiety or half part of my dwelling-house, or one-half part of the dwelling-house bequeathed to his son *Fayette*, which he purchased of the Hughes's ; and also one-half of the kitchen garden and out-houses belonging to either of the aforesaid farms, which she may choose at any time to live at during her widowhood."

And the said testator declared also as follows :

" I do hereby direct my son, *Edward R. Gibson*, and my son, *Fayette Gibson*, their heirs and assigns, to furnish their mother with sufficient fire-wood off the said lands bequeathed to them, so long as she may remain in either of the houses aforesaid, which wood is to be cut and delivered to her at the door, prepared for her use as fuel generally is." The will then devised to his wife during her natural life and no longer, certain slaves, household furniture, and horses and cows, " and the privilege of pasturage for them, with the use of the stable and provender, on the plantation she may choose from time to time to reside on."

The testator then devised to *Fayette Gibson* and Frances Gibson, certain household furniture ; and he then devised to his wife, Rebecca Gibson, an annuity during her widowhood, of $500, payable by his two sons, Edward R. Gibson and *Fayette Gibson*, to be reduced one-half in case of her second marriage ; and then devised as follows : By this my will, I do hereby declare, *that the foregoing bequest and devise to my*

*wife is in lieu of and full satisfaction for her dower in my lands and real estate, and her thirds of my personal estate, and remainder of my real and personal estate not herein before disposed of.*

The testator then directed the plantation purchased of Thomas Stevens, sheriff, to be conveyed to Jennet Gibson, wife of Edward R. Gibson, as soon as he or she shall pay $1000 towards his personal estate, and certain lands in Allegany county, and in Tuckahoe, and a house and lot in Easton, in the occupation of *Thomas P. Bennett,* were ordered to be sold for payment of his debts, and distributed his negroes between *Edward R. Gibson, Fayette Gibson, Frances Gibson, Harriet Bennett,* and *Ann Reynolds,* and also devised the surplus of his estate after payment of debts, devises and legacies, to the last named parties, except Mrs. *Ann Reynolds.*

The testator then declared as follows :

" I hereby appropriate and direct to be applied towards the payment of my debts, all debts due me, together with all the crops secured and growing on the " *Marengo*," the Wye or tan-yard and *Sharp's Island* farms ; and also the crops to be made and secured on the said three farms, for and during the year 1818. Should this appropriation not be sufficient, I also appropriate the crops for the next year, to be made on said farms, to be applied to the same purpose. My son, *Edward R. Gibson,* is to support the family during the making and securing of the aforesaid crops, and carry on the several establishments as I have done, and receive as a compensation therefor, six per centum on the amount of the crop or crops appropriated—the said family and establishment to be supported at the same time, out of the proceeds of said crop or crops."

The testator then appointed *Rebecca* and *Edward R. Gibson,* and *Thomas P. Bennett,* executors. This will was executed on the 29th November, 1817.

By a codicil of the same date, the devisees of the parts of *Marengo,* were prohibited from selling the same except to each other or their sisters, that is to say, *Edward R.* could

only sell to *Fayette*, and *Fayette* could only sell his part to those of his two sisters who should reside on the same; and sixty acres of land purchased of *Samuel T. Garey*, or its proceeds, were further appropriated to payment of debts.

By a second codicil, the estate to *Clara Tilton*, upon her death without heirs, was to *revert* to her brother, *Nehemiah Tilton*, and the testator's land in Allegany, in Tuckahoe, and the house and lot in Easton, were devised to *Edward R. Gibson*, in trust for his grand-niece, *Nancy Gibson*, and *Fayette Gibson* was nominated executor in the place of *Thomas P. Bennett*.

On the 13th January, 1818, Rebecca Gibson, the widow, certified to the register of wills, her approval of, and intention to stand by the will, and authorized him to take probat thereof, which was done. *Rebecca* and *Fayette Gibson* refused to act as executors.

Exhibit No. 4. Record of the proceeding at law, *James McCormick, Jr.* against *Edward R. Gibson*, executor of Jacob Gibson. Judgment confessed 28th May, 1822, for $2500, with interest from 21st March, 1818, and costs, to bind assets in a due course of administration.

Exhibit No. 5. Account of the executor, E. R. Gibson, passed 29th April, 1823, showing payments to a variety of creditors on account and in part of their claims, and an overpayment by the executor of $1828 37.

Exhibit No. 6. Deed of 14th September, 1818, Edward R. Gibson to James Tilton, Jr. and Rigby Hopkins, mortgage of the estate devised to E. R. Gibson, to indemnify them as sureties of said Gibson, as executor of his father's estate.

Exhibit No. 7. Deed of 1st January, 1822, *Edward R.* to *Fayette Gibson*, in consideration of $22,342, for all that part of *Marengo* devised by Jacob to E. R. Gibson, with a covenant that he conveys a good and indefeasible title in fee.

Exhibit No. 8. Fayette to E. R. Gibson, deed of mortgage of 2d January, 1822, to secure payment of $9000, in three equal annual instalments, with interest.

Exhibit No. 9. Fayette Gibson to John Wilson Blake,

deed of 16th May, 1821, in consideration of $10,500 conveying the following tracts of land : " Batchelor's Branch"— " Batchelor's Branch Addition"—" Thief Keep Out"— " Bennett's Neglect"—" Bennett's Neglect Resurveyed"— part of " Triangle"—part of " Hall's Range," adjoining, to make up 400 acres in fee, devised to *Fayette Gibson* by his father Jacob. Also, the tracts called " Partnership" and " Springfield," covenant against the claims of the said Fayette, and those claiming under him.

Exhibit No. 10. John Wilson Blake to *Fayette Gibson*, 18th May, 1821, deed of mortgage of lands above conveyed to secure purchase money of deed No. 9.

Exhibit No. 11. *Fayette Gibson* to Col. *Edward Lloyd*, deed of 24th October, 1821, in consideration of $7025, for all that part of a tract called " Marengo," situate on and included in, &c. beginning at, &c. " it being the place described in the last will and testament of Jacob Gibson, deceased, and running thence, &c. containing 222½ acres. Also, all that other part of *Marengo*, &c. containing 60½ acres, with a general warranty of the title in fee."

On the 18th January, 1824, the Chancellor passed an order of publication against the non-resident defendants, Edward R. Gibson, James Tilton and Frances his wife, and Clara and Nehemiah Tilton, to answer the bill on or before the 20th May, 1824. Edward Lloyd, John W. Blake, the Farmers' Bank of Maryland, and Thomas P. Bennett and Wife, appeared at the return of the subpoenas at March term, 1824.

Proof of the publication of the Chancellor's order of 18th January, was also filed :

At July term, 1824, *Edward Lloyd* filed his answer, admitting the mortgage of *Jacob Gibson* to the *Farmers' Bank;* his death and last will as filed ; that he purchased from *Fayette Gibson* a part of *Marengo*, mortgaged and devised as aforesaid, and for which he obtained a deed on the 24th October, 1821 ; that the sale to him was fair and *bona fide*, " and as the said land had been mortgaged by the aforesaid *Jacob Gibson* as aforesaid, this defendant, on paying or securing

to be paid to the *Farmers' Bank of Maryland* the sum of $3161 53, obtained from them an instrument of writing in the nature of a release as to his said part of " *Marengo*," which release was exhibited with his said answer as a part thereof; that the whole amount of the purchase money of his part of Marengo, has been applied to the payment of debts due from the estate of *Jacob Gibson*, to wit, $3161 to said *Bank*, and $2579 29 had been paid or secured to a certain *Thomas Hayward*, who had a judgment and execution against the estate of the said *Jacob Gibson*, and the balance applied to a debt due said *defendant* from the said estate; that he was a fair and *bona fide* purchaser for value, without notice of complainant's claim; that he did not know at the time of his purchase, that the personal estate of the said *Jacob Gibson* would be insufficient to pay his debts; and that his land is not liable to pay complainant's claim.

The agreement between *Edward Lloyd* and *Farmers' Bank*, was dated 21st November, 1821, and recited, the said *Edward Lloyd* hath lately purchased of *Fayette Gibson*, that part of a tract of land called " *Marengo*," which *Jacob Gibson* devised to his son *Fayette*, and hath caused a certain portion of the purchase money, to wit, the sum of $3161 53, to be applied to the credit of a judgment obtained by the said Bank against the said *Fayette Gibson*; and whereas the said tract called Marengo, was heretofore mortgaged by the said Jacob, &c. on which there is yet remaining due a principal of $6050, with interest from 18th January, 1818; and whereas the residue of the said tract of land called "*Marengo*," over and above the part so sold by the said *Fayette Gibson*, to the said Edward Lloyd, is in the opinion of the said President and Directors, very amply sufficient to cover the balance of the mortgage money so remaining due to the Bank by the representatives of the said *Jacob Gibson*, the said *President and Directors*, at the instance of the said *Edward Lloyd*, and in consideration of the premises, agree that if any inattention or unreasonable delay on the part of the representatives of the said *Jacob Gibson*, in paying the balance of the said mortgage

money, should make it necessary for the said Bank to resort to a sale of the mortgaged premises, they will not disturb or dispose of that parcel of the said tract which the said Edward Lloyd has so purchased of the said *Fayette Gibson,* but will resort to and cause to be sold the residue of the said tract only, or so much of the said residue as shall be sufficient to satisfy the balance of the said mortgage money, interest and costs—and after payment of the claim, &c. they will, on his request, cause a release of his land to be executed to him; and the execution of this paper was admitted by the complainant and the Bank.

At September term, 1824, the Farmers' Bank filed their answer; she claimed a debt under his mortgage at the time of *Jacob Gibson's* death, of $6050, with interest from 21st January, 1818, and prayed a sale of the land to satisfy it; the answer also admitted the complainant's claim.

With the answer of the *Bank,* was also filed a note of *Jacob Gibson's,* dated 19th November, 1817, for $6050, payable sixty days after date to said Bank, to which was appended a declaration of said *Gibson,* that his mortgage was a security for its payment, with the usual probat that the debt was unpaid.

At the same term, *James Tilton* filed his answer, admitting the mortgage to the Bank, and referring to it for its object and provisions; alleging he had no particular knowledge of the note on which complainant's claim was founded, but if the same exists, *pleads the act of limitations* thereto, and relies upon that bar; denies that the assets of Jacob Gibson have been exhausted in a due course of administration, admits the deeds and mortgages referred to in the bill of complaint.

At March term, 1824, *Thomas P. Bennett and Wife* filed their answer, alleging that Jacob Gibson at his death, had but an equitable estate in *Peach Blossom,* the tract devised to said Harriet Bennett, admitting complainant's claim, mortgage to the Bank, deeds between *Edward R.* and *Fayette Gibson;* that they had always hoped and believed that the

personal estate of the said *Edward Gibson,* together with the proceeds of the sales of the property by him devised to be sold, and the rents and profits of the real estate as directed by his (Jacob Gibson's) will to be applied to the payment of his debts, would have been amply sufficient to discharge the same, and all expenses of the administration; and the answer then proceeded to detail many circumstances and losses, attending the administration of the estate, to show why that result had not been accomplished.

At July term, 1825, *Fayette Gibson* filed his answer, admitting the material allegations of the bill, his purchase from and mortgage to *Edward R. Gibson,* his sale to *John Wilson Blake* and Col. *Edward Lloyd;* that the greater part of the purchase due from *Blake* and *Lloyd* was applied to payment of his father's debts; that the debts of *Jacob Gibson* cannot be paid without a sale of his land, a contribution among his devisees; that he is willing to contribute upon equitable principles.

At the same time *John Wilson Blake* filed his answer, admitting the complainant's bill, but alleging that upon his purchase from *Fayette Gibson,* it was alleged that the purchase money should be applied towards the payment of the Farmers' Bank debt, until it should be discharged; that he hath paid the sum of $5805 56, to the said *Bank ;* that he hath paid *Fayette Gibson* $1651 94, and that he now owes a balance which he is ready to pay; that his contract was fair and *bona fide,* and as an innocent purchaser he prays to be protected in a court of equity. The mortgage from said *Blake* to *Fayette Gibson,* of 18th May, 1821, was exhibited with said bill and certificate of the Bank, of 13th July, 1825, of the payment to her.

At September, 1825, the Chancellor ordered that *Rigby Hopkins,* being returned attached, should answer the bill on or before 4th December next, otherwise, &c.

At September term, 1826, the complainant entered a general replication to all the answers filed in the cause.

The complainant having proceeded to a return of an attach-

ment with proclamations against the defendants in the bill who had not answered, at this term petitioned the Chancellor, alleging that as to certain defendants the cause was at issue, and as to the others they were in contempt, prayed for a commission to take testimony, naming four commissioners; whereupon the Chancellor, on the 8th November, 1826, ordered that a commission should issue, unless the defendants name and strike commissioners on or before the 15th December next.

And at the same term the Chancellor passed an interlocutory order as to *Nancy Gibson, Rebecca Gibson, Joseph W. Reynolds* and *Ann* his wife, heretofore returned proclamated, and as to *Edward R. Gibson, Frances Tilton* wife of *James Tilton, Clara Tilton, Nehemiah Tilton,* and *Rigby Hopkins,* notified by order of publication duly published, declaring the complainant entitled to relief, and awarding a commission to take proof, which was issued, and the complainant's claim was established in proof.

At December, 1827, the Chancellor dismissed the bill on the ground that the plea of limitation interposed by James Tilton, operated in favour of all the defendants, but upon appeal that decree was reversed, and the cause remanded for further proceedings, 13th July, 1831.

On the 22d July, 1831, the complainant issued a second commission to take proof in support of his bill, which was returned on the 23d February, 1832.

On the 3d July, 1832, *James Tilton* and *Frances* his wife, petitioned the Court of Chancery, on the ground of the want of knowledge of Frances Tilton, of their proceedings, she being a non-resident, for leave to file an answer, which petition the Chancellor dismissed on the 17th August, 1832.

On the 24th August, 1832, the complainant filed his bill of revivor as to the heirs at law of John W. Blake, a deceased defendant, and proceedings were had to make them defendants, &c.

On the 26th June, 1833, similar proceedings were had as to *Harriet Bennett,* deceased.

On the 17th August, 1833, *Clara Tilton* filed her petition, suggesting that at the commencement of this suit she was an infant; that she now resides in the state of Indiana with her father; that she never heard of the existence of this suit until lately; that she attained her age the 20th April, 1833; that as soon as she could she employed counsel, and now prays leave to file her answer.

This petition was sworn to before a justice of the peace in Indiana, and certified under the seal of the circuit court of Jefferson county, Indiana, by the deputy clerk thereof.

The answer of Clara Tilton relied on the plea of limitations as to complainant's claim in various forms, and denies that *Jacob Gibson* did not leave personal property sufficient to pay his debts; that her brother, Nehemiah Tilton, is dead.

The Chancellor ordered the answer of Clara Tilton to be received, subject to all just exceptions, and it was accordingly filed.

On the 9th September, 1833, a commission was issued to the Baltimore commissioners.

On the 14th October, 1833, *James Tilton and Wife* again petitioned the Chancellor for leave to file an answer in this cause, which was dismissed with costs—from which, on the 13th March, 1834, they noted an appeal, as also on the order of the 17th August, 1833.

Several other commissions were issued, and proof taken of the claims of creditors, of the application of the proceeds of the land sold by *Fayette Gibson*, in part payment of the debt due the *Farmers' Bank*, and their agreement to look to the residue of the mortgaged property for the satisfaction of the balance due them.

On the 16th September, 1835, the complainant filed another bill of revivor as to Col. *Edward Lloyd*, now deceased, upon which his devisee, *Edward Lloyd*, answered and relied on the contract of 21st November, 1821, made between his father and the Bank, and that inasmuch as the purchase money of the land so paid by his father, had been applied to the payment of the debts of *Jacob Gibson* to a very large amount, that an account

of the said *Jacob Gibson's* estate should be stated, and that a fair and just apportionment of the debts of said estate, among his devisees, heirs at law and personal representatives, so that each may contribute according to law to the payment of said debts, and that the land purchased by his late father *may be exempted* from sale, for the payment of debts due said *Gibson's* estate, until it shall appear that the real and personal estate of the said *Gibson* have been exhausted so far as to place him on a footing with the representatives of the said *Jacob*, &c.

On the 13th May, 1836, the Chancellor (BLAND) decreed as follows: "The claim of the complainant being established to the satisfaction of the Chancellor, except as against the defendant, *James Tilton* and *Clara Tilton*, to the extent of whose interest it is barred by the act of limitations, and it appearing that the personal estate of the said *Jacob Gibson*, deceased, is not sufficient for the payment of his debts—it is thereupon decreed, that the bill of complaint in this cause be and the same is hereby taken *pro confesso* against the absent defendant, &c. and against, &c.; that the real estate of the said *Jacob Gibson*, deceased, or so much thereof as may be necessary to be sold for the payment of the mortgage claim of the defendants, the *President and Directors of the Farmers' Bank of Maryland*, and the claim of the complainant, as stated in the proceedings, and all other debts due from the said Jacob Gibson, deceased; that John Scott be appointed trustee;" and after prescribing the course of procedure in relation to a sale, that he shall " convey to the purchaser of said property, and to his, her or their heirs, the property to him, her or them sold, free, clear and discharged from all claim to the parties in the cause, and of any person or persons claiming by, from or under them," &c. Notice was also ordered to be given to the creditors of the deceased debtor, to file their claims. And it is further adjudged, ordered and decreed, in conformity with the decree of the Court of Appeals aforesaid, that the answer of the defendant, *James Tilton*, and according to the principles of the same decree, the answer of

the defendant, *Clara Tilton*, be and they are hereby declared to operate as protections to the interests of the said defendants in the real estate aforesaid, as against the complainant; and in taking the account of the claim of the complainant, the auditor of this court is directed to treat it as having been paid in proportion to the extent of the interests of the said defendants, *James Tilton* and *Clara Tilton*, to which extent they would have been required to contribute towards payment thereof, in respect of the interests acquired by them under the will of the said *Jacob Gibson*, deceased, if the aforesaid answers had not been filed—and the parties are hereby authorized to take testimony in relation to said proportional deduction from the said plaintiff's claim, &c.

From which decree *Fayette Gibson* and the other defendants, except *James* and *Clara Tilton*, appealed to this court.

The cause came on to be argued before BUCHANAN, Ch. J., STEPHEN, ARCHER, DORSEY, CHAMBERS and SPENCE, J.

J. JOHNSON, for the appellant.

1. The bill is defective in not making *Edward R. Gibson* a party *as executor*, and in not calling upon him to account in that capacity, for the personal estate of the testator. *Travis, et al vs. Waters*, 1 *John. C. R.* 85.

2. That upon the death of *Edward Lloyd* the elder, no further proceedings should have been had in the cause until his son and devisee, *Edward Lloyd*, was made a party; he being then the owner of a part of that portion of the real estate of *Jacob Gibson*, covered by the mortgage to the *Farmers' Bank*, and ordered by the decree to be sold. This point was waived at the argument.

3. That the Chancellor erred in permitting *Clara Tilton* to file the plea of limitations in the then state of the proceedings. This point was also waived.

4. That before a decree should have been passed for the sale of the real estate of *Jacob Gibson*, an account should

have been taken, ascertaining the amount of unsatisfied claims against him, and the proportion which each of the several devisees was bound to pay. *Mc Cormick vs. Gibson, et al,* 3 *Gill and John.* 18. 1 *Stor. Eq.* 471.

The claim against each is decided to be a distinct claim, and each must respond according to its value. It is the same in principle, as if separate lots had been mortgaged, or sold to several persons—all liable for the same demand. 1 *Stor. Eq.* 461, 462. *Stevens vs. Cooper,* 1 *John. C. R.* 425.

This account is preliminary to a decree for a sale; for if the devisees respectively, are disposed to pay a portion of the debt, they are so entitled, and that experimental account should be first stated.

The complainant as to Tilton was paid—yet his was but a life estate. There were payments on account; how could the extent of the liabilities be ascertained before stating the account, ascertaining the amount paid by *Clara Tilton* and her father.

The trustee could not execute his duty without a previous audit. 1822, *ch.* 165. *Callis and Semmes vs. Ridout, et al,* 7 *Gill and John.* 2.

The mortgagees have not a general lien on *Gibson's* estate. There is no covenant to pay the debt; no agreement that Gibson's estate may be resold for the unpaid residue. The Bank could only look to the mortgage property for their debt; that made an account the more necessary.

5. That such an account was especially proper and necessary with respect to *Fayette Gibson,* as the record shows that a large amount of the proceeds of the real estate devised to him, has been actually applied to the payment of the debts of the testator. He has paid $13,500, through *Blake* and *Lloyd,* of his father's debt. Justice to him demands an account.

6. That from the very frame of the decree, the amount to be contributed by each devisee was an indispensable prerequisite to a sale, as by such an account only could the extent of the interests of *James Tilton* and his daughter *Clara,* be ascertained, and to which extent the Chancellor directed that the complainant's claim should be treated as paid.

7. That the decree is erroneous in not giving a day for the payment of the mortgage debt to the Bank. The sale was to be one-third for cash. 1785, *ch.* 72, *sec.* 3. *David, et al vs. Grahame,* 2 *Har. and Gill,* 94. The Bank is made a defendant; in her answer she becomes a complainant; and prays a sale of the mortgaged premises to pay her debt. This is an application to foreclose a mortgage, and only differs in form from the ordinary proceedings to sell. The mortgagors were entitled to a day of payment.

8. The decree is erroneous because it does not reserve the rights secured to Mrs. Rebecca Gibson, the widow of Jacob Gibson, in conformity to his will.

A scanty provision was made for the widow. It was the privilege of occupying a dwelling-house in part—an annuity from the sons, and this only during widowhood. This was in lieu of dower, and she stood to the will. The decree does *not* notice her rights. The whole estate is ordered to be sold, with certain exceptions not applicable to the widow.

A widow, as in the present case, is a purchaser for a *bona fide* consideration, and is entitled to the value of her dower. 1798, *ch.* 101, *sub ch.* 13, *sec.* 5. *Margaret Hall's case,* 1 *Bland's Rep.* 203. *Blower vs. Morrett,* 2 *Ves. Sr.* 420. She is preferred to creditors to the value of her dower. She has not been so preferred. The sale is authorized clear of her rights, over-ruling her entire estate—ordering a sale of the whole. If nothing passes to her by the will, the devise does not bar her dower. In that case she is remitted to her dower rights.

9. The agreement between the *Bank* and *Lloyd,* by which that part of *Marengo* purchased by the latter from *Fayette Gibson,* was released from the operation of the mortgage, has the effect to discharge the debt of the Bank; at least to the extent of the proportion which the property so released, bears to the value of the whole mortgaged premises.

In consideration of the payment of another debt by *Lloyd,* for which the mortgaged premises was not responsible, the Bank agreed to release a part of the mortgaged property.

She releases a portion perhaps more valuable than the debt. It would have paid the debt; by discharging a part, to the relative value of that part she is paid. Then as to the residue, the Bank can only recover from it, the relative portion which it should have paid. 1 *Stor. Eq.* 322, 321, 478, (*note.*) It may be doubted whether the Bank has not lost her whole debt. 1 *Law Lib.* 158. The doctrine is not founded on contract, but on natural equity and equality. So if one surety is discharged, and the other surety pays one-half of the debt, the rule of equity is violated if the discharged party has to pay again.

John Scott and T. S. Alexander, for *McCormick,* contended:

1. That the decree of this court, passed on the hearing of the former appeal taken in this cause, is conclusive of the correctness of the Chancellor's decree which is now before the court, *so far at least,* as the said decree establishes his right to satisfaction of his claim, out of the real estate of his deceased debtor, Jacob Gibson. *McCormick vs. Gibson, et al,* 3 *Gill and John.* 13.

2. The former decree established that complainant was entitled to relief. The only question on the Chancellor's decree, is whether right in point of form or not. If other grounds existed showing complainant *not* entitled to relief, this court would have affirmed the decree appealed from. *McCormick* claimed as a creditor, and he was bound to prove it. When this court asserted the Chancellor was wrong in dismissing the bill, it also asserted the complainant was entitled to relief. When the decree was reversed, this court acts as the Chancellor should have done, and passes such a decree as he should have passed, and places the cause in such a position as will promote such relief as the parties are entitled to. The specific mode of relief is not announced; but you have assumed every fact pleaded and proved, to give complainant a right as a creditor. Objections taken now in this cause, would not induce you to change your former opinion. Nor

can the Chancellor be reversed for following this court. If his course arises from the former decree, it is not *his* error. This court cannot review and reverse their former opinion. *Hammond vs. Ridgely's Lessee,* 5 *Har. and John.* 245. A judgment in a particular cause remanded for further proceedings, when returned, the first judgment is conclusive. *Clerklee vs. Mundell,* 4 *Har. and John.* 505. Under the act of 1832, ch. 302, sec. 6, when causes are remanded, the opinion of this court is conclusive on the points decided by it.

An inferior tribunal can never err in following the directions of a superior tribunal. 1 *Bro. Parl. Cas.* 125. *Ib.* 281, 284. *Himely vs. Rose,* 5 *Cranch,* 313, 316. In such cases, the only question open is, has the decree been properly executed by the inferior tribunal? *The Santa Maria,* 10 *Wheat.* 431. 2 *Mar. C. P.* 579.

The rule is the same, as when the same decree is brought in evidence in another cause, a plea of former decree only raises the question of identity of subject matter in both causes.

3. That independent of the decree of this court, the complainant's right is made out to a satisfaction of his claim against said real estate, as he has in his bill sufficiently charged, and proved the insufficiency of the personal estate of the deceased to discharge his debt.

In discussing this point, the complainant will maintain :

1. That as the personal estate had been exhausted, an account thereof was practically useless.

2. That if the defendants below (the present appellants) had shown the propriety of taking an account of the personal estate, such account might, and would have been decreed by the Chancellor.

3. That it is too late for the defendants to object to the insufficiency of the averments in the bill.

The several averments on that head are sufficient. The complainant is not bound to use the language of the act of assembly, 1785, ch. 72, sec. 2. The general averments in the bill, are equivalent to the language and requirements of

the act, and substantial pleading is all that is required—no form of words is demanded. *Stor. Eq. Plea.* 205, 206. 3 *Chan. Rep.* 28. *Harrison vs. Hogg*, 2 *Ves. Jr.* 328. *Dormer vs. Fortescue*, 3 *Atk.* 132. Admissions in an answer will aid a defective averment in a bill.

Matter by answer may be put in issue, and raise a question which ought to have been raised by the bill. *Birely and Holtz vs. Staley*, 5 *Gill and John.* 554. This is in effect an objection to the sufficiency of the averment in the bill. *Strike vs. McDonald and Son*, 2 *Har. and Gill*, 233. *Travis, et al vs. Waters*, 1 *John. C. C.* 84.

4. That the decree is right in directing a sale of the real estate of the testator generally, or of so much thereof as should be necessary for the payment of the claims of the complainant below, of the Farmers' Bank of Maryland, a defendant, and his *other* creditors.

In discussing this point, the counsel will insist:

1. That the claims of the creditors of the deceased bind his real estate in *solido*, and that they are entitled to a sale of such part thereof as may be made the more readily available for payment of their demands.

2. That it is the practice of the court to direct a sale of a deceased debtor's real estate, for payment of his debts *generally*, without requiring a previous account to be taken of those debts, *whenever it appears that a sale will ultimately become necessary*, the court relying on its power to do justice between the parties in its ultimate disposition of the fund.

3. That such decree was peculiarly proper in this cause, from the fact that the very large mortgage claim of the Farmers' Bank of Maryland bound a large portion of the whole estate, and a sale of the whole estate, or a considerable portion thereof, was absolutely necessary for payment of said claim, and from the great delay which had already taken place in the settlement of the deceased's estate.

4. That it is always in the discretion of the court, to suspend the execution of its general decree, for the purpose of taking an account of outstanding debts, or any other account,

upon a proper application by the heirs at law, or devisees of the real estate ; and in the present case, such application was made and granted to enable the parties to adjust their proportions of the outstanding debts, to be paid by them respectively. It was not until after testimony had been taken upon this application, and the court was prepared to dispense such justice as they pretended to desire, that this appeal was entered.

5. That a sale of the interest of James Tilton and his daughter Clara Tilton, was necessary for the payment of the debt due to the Farmers' Bank, although the claim of the complainant as against them was adjudged to be barred, and these parties do not appeal from the decree ; and it would have been against equity to have stayed the proceedings until the very inconsiderable portions of the complainant's claim thus adjudged to be barred, could be accurately adjusted, after the delay of nearly twenty years, which has been practised by the appellant.

6. That the widow claims as a devisee, and therefore her interests as a devisee were properly bound by this decree.

5th. That the complainant concurs with the appellants in the point that the Chancellor erred in admitting the plea of limitations lately filed by *Clara Tilton*, and assents to a reversal of the decree in this particular. But he denies that the appellants, or any of them, are aggrieved by this part of the decree, or can be benefitted by its reversal, inasmuch as the charge against them is not increased by the discharge of Clara Tilton.

6. That if the decree is found to be erroneous in any of its moral provisions, it is at least clear and admitted by the points filed on the other side, that the appellee is entitled to relief, and this court will therefore proceed to pass such decree as the Chancellor ought to have passed, allowing him the costs which he has incurred on this appeal.

The Farmers' Bank of Maryland, an appellee in the cause, relies on all the foregoing points, and further insists :

7. That it is competent for this court to administer equity

as between the defendants to the suit in the court of Chancery; and as the claim of the said appellee is fully stated in the pleadings, is admitted by all the defendants who have answered, and taken *pro confesso* as against all others, this court will affirm the decree, at least so far as to authorize an immediate sale of the premises for satisfaction of the claim of said appellee, even though it should appear that the said decree is defective or erroneous in regard to the immediate interests of the complainant.

RANDALL, for the Farmers' Bank.

The first notice of opposition to this claim, was given at this bar; no prior proceeding ever objected to it. It is set out in the bill. The parties answering admit it. The mortgage is pleaded and not denied. The answer of Lloyd, and his agreement with the Bank, disclose the whole ground of objection. The claim was also established by proof, and no exception to it. This claim may be regarded in two aspects: 1. As independent of the mortgage. 2. As under the mortgage. If the parties designed a contest, they should have answered, and shewn the manner of their objection; instead of this, they submit, and in fact confess the debt for twelve years, and this with full notice. The defence should have been taken by answer. *Chambers vs. Chalmers, et al*, 4 *Gill and John.* 441. The debt paid by Lloyd was secured by the mortgage. It was not the debt set forth in terms by that instrument; but it was included in the general words, as one of the other debts which *might* arise, and for which the mortgage in case of need, was to stand as a security; and the devisees of *Marengo* all renewed the note, and thus kept the responsibility of the mortgaged land for it. *Brinckerhoff vs. Lansing*, 4 *John. C. R.* 66.

The act of 1825 could not affect previous loans, nor destroy the right to tack claims then in force. This mortgage is a security for any equitable claim due from the mortgagor to the mortgagee. 2 *Pow.* 557. 5 *Con. S. C. Rep.* 657. *Chase vs. McDonald and Ridgely,* 7 *Har. and John.* 197. 4 *Kent,* 174.

The devisees of *Marengo* have alone the right to complain of this decree. Can they complain under the circumstances? *Edward R. Gibson* cannot complain; nor can he say he was injured. It was a debt to which he was a party on the note. He had confessed judgment in 1820. He was bound at all events to pay this debt. *Fayette Gibson* cannot complain of any mal-administration of assets. He held two portions of Marengo—one as devisee of his father; the other as bargainee of his brother. He does not object to the settlement with the Bank. He was a party to it—places his defence on it. He was relieved by the application of the fund, and consented to it. Mrs. *Tilton* does not appeal. The only other party is Mrs. *Gibson*, and that she has any interest in *Marengo*, does not appear, but if she had, she is concluded. She is a judgment debtor for the debt released. These persons were all bound previously. Part of those liable agreed with the creditor in discharge of the whole number. No objection was made; and after knowledge and acquiescence for fourteen years, it is to be presumed that all assented.

Then admit it were merely a mortgage debt, and they might complain. A portion of the property applied in discharge of the mortgage—part to another debt—still they cannot complain until they have paid the portion for which they are equitably bound. They must contribute with the property applied to the unsecured debt, and that must go on until the release of the Bank operates some prejudice to them. Then they may complain. The devisees must first pay their own share.

A part of the proceeds of the mortgaged land has been applied to payment of general creditors of the deceased; to that extent the Bank may claim to be substituted.

If the Bank has a lien on two funds, she may be confined to one, and required to leave the other to general creditors. But if so, it may raise a question of contribution, for she is not to be injured by being confined to one fund for the convenience of other persons. 3 *Pow. on Mort.* 1153. In this case the Bank may proceed under her mortgage, and as a

general creditor for the balance against the deceased's real estate. This supports the decree; the Bank is not confined to the mortgage. *Hatch vs. White,* 2 *Gall.* 152. 2 *Powell,* 774, 866. *King vs. King,* 3 *P. Wms.* 361. Independent of mortgage, the Bank has a note. It is proved. No objection has been taken to it. The Bank has a right to a decree, as between co-defendants on the pleadings as they stand. *Chamley vs. Ld. Dunsaney, et al,* 2 *Sch. and Leff.* 710, 718. *Elliott vs. Pell, et al,* 1 *Paige,* 263.

McMahon, for the Farmers' Bank.

Before I proceed to consider the proofs, I will remark on the character of the bill. It is said not to be a creditor's bill, on the ground of want of allegation that there were other creditors, with a prayer that they might come in. I maintain it is a creditor's bill. The *qui tam* allegation is never inserted in bills filed under our acts of assembly. The opinion of the Chancellor in Strike and McDonald, is, that it has been usual to omit that allegation, and it is the practice to sell real estate without it. His opinion should be of high authority on that question, acquainted as he is with the course of practice and nature of all the precedents of his court. The cotemporaneous expositions of that court on this practice, are enough for my argument. But the act of 1785, ch. 72, is necessarily for the benefit of all creditors. Its language, its objects, the sales ordered under it, show, that it authorizes a sale for the payment of all debts of a deceased. The real estate was ordered to be sold to make a new set of assets for the payment of all creditors. It is equity between this and all other creditors which is to be obtained. The personal assets are to be distributed equitably, and so are the real. Then all under this decree may come in *pro rata* upon a decree for a sale. Notice is given to all to come in. The decree is for their benefit. The case of *Byerly and Staley* was not under the act, but was upon a bill at common law, and for another object.

But the character of this bill is immaterial. It was filed

to reach assets. It is competent to the Chancellor to pass a general decree, and administer the assets. 1 *Stor. Eq.* 516, *no.* 2. 8 *Law Lib.* 194. A creditor proceeds against property. The complainant has a right to make every incumbrancer on that property a party. Prior incumbrancers are necessary parties. The object is by a single operation to release the estate from all charges. This being the character of the bill, it calls upon all incumbrancers to state their rights, and the Bank's claim is a necessary part of the complainant's claim. Every defendant admits the existence of the Bank's mortgage. No pretence of the debt discharged. The general replication is filed, and the Bank proves the amount of her claim. Such is the state of the case on which the Chancellor proceeds to decree a sale for the payment of *McCormick* and the Bank. This decree establishes the *Bank's* claim. It is a decision that the claim exists, and that the personal property is insufficient. Other creditors are to prove their demands. *Strike vs. McDonald and Son,* 2 *Har. and Gill,* 218, 261.

At the time of the decree, we held a mortgage and a note; we had the rights of special and general creditor. 4 *Kent,* 183. For money due on bond and mortgage, the creditor may proceed concurrently on both remedies; we could release the mortgage and hold Gibson personally, if no equity was interposed by a third party to restrain our right and throw us upon our mortgage.

In *Penn vs. Diggs,* the controversy was whether the simple contract or specialty was to prevail with reference to the statute of limitations, and the effect of a decree in *rem* to take the case out of the statute.

Every fund liable to pay general debts is liable to pay our debt; and he who would impeach this must show that our remedy will disappoint him of that fund.

Standing thus, with a right of election in either aspect, all necessary parties were before the Chancellor.

The only pretence of a want of party is the executor of Jacob Gibson. Now, under the mortgage he is not a neces-

sary party. *David, et al vs. Grahame,* 2 *Har. and Gill,* 94. As simple contract creditors all the parties are before the court. At what period is the objection to be urged that *Fayette Gibson* is not here as executor, and called on to account?

Objections for want of parties may sometimes be taken above. *Edw. on Parties,* 24, 25. If he is essential here, he is only so to the defendants. No motive personal to the party, allows the objection. The rule is that the party wanted is essential to justice. Such objections are only to be privileged in strong cases upon appeal. *The Mechanics' Bank of Alexandria vs. Seton,* 1 *Peters,* 306. *Birely and Holtz vs. Staley,* 5 *Gill and John.* 453. Suppose *Fayette Gibson* was not named in the bill. If no assets to pay debts at all, he need not be a party. *David vs. Grahame,* 2 *Har. and Gill,* 94. Then the reason has failed. He is only necessary to show assets exhausted. These are the objects. He is to aid in the establishment of certain facts ; a mere formal party. If the objects are supplied, this court will not reverse upon appeal. But he is named ; all his acts and transactions as executor are charged. He is in by *subpœna.* He is to answer a series of facts. His particular character need not be stated when the bill necessarily shows that character.

Have not the court the right to decree between us? The right to decree against a prior incumbrance for the relief of the creditor. If the Bank is here in an attitude for a decree, the court must award it.

Now this is a bill, on the footing of which we may come in, and assume the attitude of complainant. *Strike's case,* 1 *Bland,* 71.

The incumbrancer, and another creditor, may go into Chancery together, and have divers decrees. *Jones vs. Jones,* 1 *Bland,* 452. *Fenwick vs. Laughlin,* 1 *Bland,* 475. *Chamley vs. Ld. Dunsaney,* 2 *Sch. and Lef.* 709. *Elliot vs. Pell, et al,* 1 *Paige,* 263, 268. Decrees may be made between co-defendants, on proof taken between plaintiff and defendant in the same cause. Here every defendant admits the debt. The bill admits the amount. The court cannot

look to the answer of the other parties than Lloyd, to determine the rights between the co-defendants.

A decree is founded on pleadings and proof; facts not proved are disregarded. *Carneal vs. Banks,* 10 *Wheat,* 181. *Cowan vs. Price,* 1 *Bibb.* 173. These questions arose in this cause before.

Then what is in issue as respects the *Bank?* 1. The debt. 2. The agreement set up by *Lloyd* as a defence of the property bought by him. This defence is consistent with the other facts. It is merely to discharge himself. He states nothing for or against the other parties. We are not trying the cause with *Tilton and Wife* and *Clara Tilton;* only the other defendants appealed.

Then as to the decree, objection is made to it from the want of an account ascertaining the quantum of the claim. This question is at rest by decisions of this court. *David vs. Grahame,* 2 *Har. and Gill,* 97. The quantum of the claim is not disputed; hence an account not necessary. The claim is not disputed; the defendants proved it.

The *second* reason for an account, rests on an assumed necessity of a reduction of the Bank's claim; that inquiry is involved in the subsequent discussion of this case.

A party is not entitled to an account when he has foregone the opportunity of asking for one. *Chamley vs. Ld. Dunsaney and others,* 2 *Sch. and Lef.* 712. This objection urged after final decree, and for the first time in the appellate court, will not be heard.

The next point relates to our attitude as simple contract creditors—a sale for the insufficiency of the personal estate. The complainant exhibits with the bill an inventory, and an account showing it exhausted. If the allegation was the complainant's death leaving sufficient estate, these facts would have disproved that statement. The only difference here is, we state the facts which prove the allegation, instead of the allegation itself. This is sufficient. *Tiernan vs. Poor and Wife,* 1 *Gill and John.* 230. *Birely vs. Staley,* 5 *Gill and John.* 451. *Warfield's case.* The act of 1832 has closed this point, whether it be matter of pleading or proof.

The account of the Orphans court cannot be impeached here. The vouchers are not here. It is mere conjecture that it is wrong. Some creditors are paid in full, some in part, still the assets are gone. If the account was restated, the fact of insufficiency still exists.

Then as to the effect of the former decision in chancery, limitation was held a bar. The point presented was limitations—but the bill was dismissed. So it stood in this court. Was it not competent then, as now, to allege want of parties, or wrongful allowance; or no relief due? These objections were open, yet the court say the complainant is entitled to relief, and remand the cause.

Every decree in a cause ought to be conclusive of all objections which might have been urged against such decree; else no end to litigation. *Gover vs. Hall,* 3 *H. & J.* 47.

The main objection, however, is that before decree, an account should have been taken, ascertaining the liabilities of the estate, and making a *pro rata* adjustment among the claimants.

Now on this theory no creditor could come in after decree, for that would disturb the *pro rata* distribution.

They also demand proof of the value of the whole estate, and how much each part is liable for. In effect they ask for an experimental decree.

The practice proposed is full of difficulty. When there is a general lien, it may be enforced before waiting for ascertainment of equities between the party defendants. No exception to this, unless parties ask on peculiar grounds of equity to be relieved from the general rule.

The power here is to sell the lands of the deceased on notice to his heirs—a proceeding in *rem* for the payment of creditors, depending on the exhaustion of the personal estate. It is a charge on the land *in solidum,* and not on parcels.

A decree on different principles, requiring an account of the personal before sale, is in discretion of the Chancellor. The right to this is *ex gratia.* But under the existing practice every existing right is protected. The creditors are first

paid—the heirs are entitled to surplus. The surplus right is not to be adjusted until after the creditor is paid. There may be occasional inconveniences in this practice, but it does not shut the parties out from controverting their rights, yet accomplishes their protection in the best mode. The only difference is in point of time.

It would be an inconvenient practice to decree a separate sale of each heir's land. The easy mode of redress is for the heirs to pay off the debts.

Again, there is no evidence that this estate will do more than pay off the debts. The equities relied on may never arise. *Hoye vs. Penn,* 2 *Har. & Gill.* 477. *Hoye vs. Penn,* 1 *Bland,* 28.

Then as to the peculiar objection founded on Mr. Lloyd's agreement. He complains because he is charged. The appellant complains he is discharged. The decree charges. Their objection then does not arise. The Bank cannot proceed against *Lloyd,* but his property is still liable to other creditors. If the agreement discharges the claim, *Lloyd* pleads it, but not so as to make it a defence to the other parties.

But who makes this objection? *Fayette Gibson* who has the whole of Marengo, and conveyed to *Lloyd* with a general warranty against the very mortgage. How could he claim contribution? He cannot complain that his covenant is released.

An heir or devisee may call on the personal estate to pay off a mortgage. *Galton vs. Hancock,* 2 *Atk.* 430. *Livingston vs. Livingston,* 3 *John. C. R.* 153, 158. *Long vs. Short,* 1 *P. Wms.* 403.

Nor is there any error as respects Mrs. Rebecca Gibson. She has no interest in the property except by way of easement and license. Use and occupation at her election, with direction to her son to furnish fire-wood—also an annuity from her sons. This is in lieu of dower and of personal estate. It is no charge on the estate—no interest in the land.

She is a purchaser for a valuable consideration, but she is a purchaser from the mortgagor *Gibson,* and stands not on

higher ground than he did. She is a purchaser, and could not object to the sale. She took subject to the incumbrance. She may come in, in preference to general creditors, but as she never came in, she is not entitled to costs. If she loses her *devise*, she is turned round to her dower, and on proof of that, is let in as a creditor.

The Chancellor, it is said, gave no day for the payment of the money. Now if the complainant was entitled to relief, no day is required. The Chancellor is not to make two decrees for a sale. A defendant incumbrancer is not embraced by the act of assembly. It is only in the case of mortgagee vs. mortgagor, that a day is given to pay off the mortgage debt. If the spirit of the statute is gratified, that is sufficient. Any proceeding before the Chancellor, which gives a day, is enough. We ask for a sale. We are allowed one on notice—notice before sale. This is a suspensory order.

R. JOHNSON, for the appellants, in reply :

It is conceded there must be a reversal. The difficulty arises in the extent of it.

As respects *Lloyd's* property the decree is erroneous, and if in point of law, the decree ascertains the debt of the *Bank* and *McCormick* as alleged, and if decree is to pay the *whole extent* of both these debts, it is erroneous. The argument at first assumed that much.

There is however a preliminary question as to the effect of the first decision in establishing the right of the complainants. The bill was filed on the allegation of the personal estate exhausted; a sale for the whole debt, the assets being exhausted, and not for a proportion of assets, and a sale for the residue. On *Tilton's* plea the bill was dismissed. The opinion of the court states, the only question on that appeal is the effect of the plea of limitations. By it this court meant to exclude all other questions. The decree is different from the opinion; the effect of the plea is limited, and the court reversed the decree, and remanded the cause for relief. The extent of the relief is left open. It merely informs the Chancellor,

that the complainant on the bill is entitled to recover, and as the executor is before the court, if he had assets then, a decree to account against him gratifies the decree.

The question is open as to extent of relief, out of the *real assets* alone.

As far as the Bank is concerned, whether the bank is entitled to be preferred out of the mortgaged premises, in whole or in part.

My friend refers to the account of the executor exhibited with the bill, and claims as a part of his own, that account which shows the decree erroneous.

The appellants demand an account of personal assets before a decree for a sale.

The sum of $38,328 was applicable to the debts of the deceased. No evidence of any claim but the debts in part or in whole discharged in the account that of the complainant and the *Bank*. The assets are sufficient to pay 75 cents in the dollar. Under the testamentary law, the *Bank* should have received a part of the personal estate. The devisees could call on the personal estate for relief. *McCormick* was entitled to be then paid. · He has only received $600. The Bank has received nothing. The act of 1785 applies to the insufficiency of assets as left by the debtor, and not to an insufficiency arising from the course of the executor; by this account a part of his own claim was paid; some debts were paid in full. There are other cases of payment; some in part, some in full.

*McCormick* was entitled to a sum of money out of personal estate, for which he had no right to charge the real estate. The case presented is, that *McCormick* is entitled to a rateable proportion of assets. If enough to pay all the debts no claim, if paid in part only authorized to go against real estate for the balance. *Collinson vs. Owens, et al,* 6 *Gill and J.* 4. The executor has no power but with personal estate. He can create no evidence against the heir or devisee.

Then what is the decree? The Chancellor has ordered the estate to be sold for payment of debts as they are alleged to

13      v.10

exist. The real estate is to be sold for payment of the mortgage claim of defendant, and claim of defendant, as stated in the proceedings, and for all other creditors. The decree is an ascertainment of a debt, and an order for payment out of the real estate. The same remark applies to the Bank's claim as considered against the estate generally. She can only look to real estate after personalty exhausted.

I proceed now to inquire whether the Bank debt is one entitled to be paid out of the real estate or not.

It is the intention of the testator alone which excuses devisees of unincumbered property from contributing with devisees of incumbered property.

The result is that the devisees of Marengo have no right and never had any to call on other devisees to make good their incumbrance.

The other devisees have a right to have the mortgage property applied to the mortgage debt.

*Gibson* was indebted on note endorsed by *Fayette Gibson* and *Tilton.* This note is renewed from time to time. Upon the last renewal it is endorsed by *Fayette* and *Rebecca Gibson.* There is an absolute judgment against each of them. Now the Bank's debt was a charge on *Marengo.* The proceeding at law extinguished the debt against Jacob. That is, the simple contract of Jacob was extinguished. Then the Bank without the consent of the devisees, enters into an agreement with Lloyd, who was to be held discharged of the lien of the mortgage. What is the effect of that agreement as to persons not parties? It is said not to be pleaded except by *Lloyd,* and that it cannot avail other defendants. Now it operates as a payment of the debt. It was evidence in the cause. It is not controverted by the Bank. The mortgagee may rely on it as a payment. He is not estopped by correlative equities. He has certainly discharged a part of the debt, and the reservation of the agreement is that the Bank will not proceed upon Lloyd's part of Marengo for payment of the balance due her.

Lloyd has a right to pay off the mortgage, and succeed to

the mortgagee's rights by assignment. I am getting clear of elder incumbrances as to junior assignees. This case is released by an elder incumbrancer. Upon a release of part of the land, mortgage debt *pro tanto* is gone, and the decree should have been accordingly. *Stevens vs. Cooper,* 1 *John. C. R.* 430. In that case there was but one debt due. The holders of parcels of incumbranced property having equities *inter se,* ought to be respected by the creditor. He should not use his power in such a way as to throw the debt on any one to the exclusion of another.

There is not more difficulty upon this appeal, than on other causes. Any devisee who pays more than his share of the testator's debts, has an equity against the others. A question of apportionment then arises before sale, and it depends upon the value at the date of the mortgage. The Chancellor's order should show the appropriation.

Then it is said the effect of the release cannot be insisted on by the parties here. It is said there are none here competent to complain of it. But since the decree must be reversed, what is this court to do? They must pass such a decree on the whole cause as the Chancellor was bound to pass. In such event, this court exercises a *quasi* original Chancery jurisdiction, and is bound to protect all parties.

But is it true none are here to complain? I assume that $9000 was to have been paid the Bank out of the personal assets. That the deficiency was paid out of the realty. That the devisees of the unmortgaged part of the real estate had a right to have the mortgaged property first appropriated to the mortgage debt. As far as it was a general debt, it was to come in for a proportion of assets.

The other devisees were injured by the Bank's contract, and consequently as to them, the same course must be pursued now as if the release had not been executed. Here the counsel went into calculations based on the accounts and condition of the estate, to show the practical consequences of the views *pro* and *con* at this part of the cause.

This decree is also erroneous from its influence on the widow's interest.

By the act of 1798, ch. 101, sub ch. 13, sec. 5, if in effect nothing passes to a widow by a devise in lieu of dower, she is not barred    She is a purchaser for a fair consideration. The widow independent of her devise is a favoured creditor. In this character she is called on by the act of 1798 to elect within ninety days whether she will abide by or renounce her husband's will.   Now, during this period, she could not ascertain whether her husband's estate was solvent or insolvent; for anterior to the settlement of her husband's estate, the law implies no knowledge in her of its condition.   1 *Bland,* 203, 204.   The widow has accepted the devise.   She comes in *qua* creditor.   She has a claim on the proceeds. In this view it makes no difference whether her dower or devise is sold.   If entitled to either, the decree is erroneous. It saves no rights.   She is a party in the cause, and under the decree no right is saved for her; the land is to be sold clear of the claims of all *parties.*

The case of the bill is insolvency of the personal estate, and an incumbrance prior to the death of the husband, on the property devised to the widow.   She therefore takes nothing by the devise.   It is in effect fruitless as to her.   Certainly as to her, this decree is erroneous.

DORSEY, Judge, delivered the opinion of the court.

An objection was taken in the course of the argument in this case, to the form of the complainant's bill; and inasmuch as it does not provide for the coming in of the other creditors of Jacob Gibson, and participating in the burdens and benefits of the suit, that it is not to be regarded in the nature of a creditor's bill, under the act of assembly of 1785, ch. 72.

But this objection, we think, cannot be sustained; such a bill is not of unfrequent occurrence in the records of the equity courts of Maryland, in which it has always been treated as a creditor's bill, in the decree founded upon it, and

all the proceedings thereunder. It has no equity, nothing to support it; but the act of assembly referred to, which prescribes no particular form of such a bill, and authorizes upon application of any creditor, the sale of the real estate in whole or in part, for the payment of the debts of a deceased debtor, whose personal estate is insufficient for the payment thereof. As far as concerns this objection, the decree of the Chancellor pursues the usual form adopted on a creditor's bill.

The decree was also objected to, because it awarded a sale of the lands mortgaged to the *Farmers' Bank of Maryland,* for the payment of the mortgage, as well as for the payment of the debts of all other creditors of the deceased, the *Farmers' Bank* being made a defendant, not a complainant in the bill.

In this objection we see no weight. A decree between co-defendants, grounded upon the pleadings between the complainants and defendants, may be made, and it is the constant practice of the courts so to do, to prevent multiplicity of suits. But such decree between co-defendants, to be binding upon them, must be founded upon, and connected with, the subject matter in litigation between the complainant and one or more of the defendants. For this doctrine see *Elliott vs. Pell,* 1 *Paige,* 263, and *Chamley vs. Lord Dunsaney and others,* 2 *Sch. and Lef.* 710, 718. The power of the Chancery court to pass that part of the decree which has been excepted to, is conclusively established by the authorities referred to, the justice and expediency of so doing cannot be denied; the assent of the mortgagee had been given, the mortgage had been long forfeited, a sale of the equity of redemption could not be resisted; then why sell the equity of redemption, subject to the outstanding mortgage, to the manifest injury of the creditors of the deceased, and the parties to this suit, and to the multiplication of litigation, by sending the purchaser, before he could realize the benefits of his purchase, into a court of equity with his bill to redeem? Consistently with the established principles of courts of equity, the Chancellor, in the matter complained of, has done nothing but what it was his duty to do.

The next exception taken to the decree is, that it has given no time to the devisees of the mortgaged premises, or those holding under them, for the payment of the mortgage debt, as directed by the 3d sec. of the act of 1785, ch. 72. This section of the act of assembly has no reference to a decree made under the circumstances of that now under consideration. By the terms of the enactment, it embraces only applications to the Chancellor to foreclose mortgages, filed by mortgagees, or their representatives. Here there is no such party complainant before the court. The bill is filed by a general creditor of the mortgagor, seeking for the payment of his debt by a sale of the mortgagor's real estate, and the mortgaged premises among the rest. Such a creditor is not to be delayed in the remedy he seeks, by giving time to the mortgagor, or those claiming under him, to pay off the incumbrance. There is no reason or object in granting such an indulgence in a case like the present. The design of the legislature, in the enactment alluded to, was to give to the debtor an opportunity of superseding the necessity for the sale of his mortgaged estate. Would giving time, and payment of the mortgage, remove the necessity for such sale in the case before us ? Certainly not. The sale must still be decreed for the payment of the general creditors of the deceased. So far as a sale of the mortgage premises is decreed for the payment of the mortgage debt, it is a mere incidental consequence to the decree, on the general creditors' bill, resulting from the established principles of courts of equity.

There is nothing in the objection taken to the bill, that it does not allege the insufficiency of the personal assets to pay the debts of the deceased. That allegation, though not made in the very terms of the law, is substantially made in the bill before us, which charges the continued existence of the complainant's claim, the exhaustion of the personal estate, and exhibits an account settled by the executor before the Orphans court, shewing the application of the whole personal fund to the discharge of the debts of the deceased; and that some of those debts were paid off but in part. If this

be not a sufficient statement of a fact required by the law to give jurisdiction to the court of Chancery, it is difficult to conceive any thing that would be, short of the use of the identical words contained in the act of assembly. A particularity like this never has been required either at law or in equity.

Another ground insisted on for the reversal of this decree, is that an account preliminary thereto, should have been taken of the disposition of the personal estate by the executor, and of the debts of the deceased remaining unpaid; and in support of this ground but one authority has been referred to, viz. that of *Callis and Semmes vs. Ridout and Ringgold,* 7 *Gill and John.* 1. But this case establishes no such rule or practice, and rests solely on the express provisions of the act of 1822, ch. 65, under which the commissioners who made sale of part of Barnaby Manor for the payment of debts, were required in the first place to give notice by advertisement, in newspapers in the state of Maryland and District of Columbia, to the creditors to exhibit to the commissioners their claims, supported by legal evidence, on or before the first day of June next thereafter, and immediately after the said first day of June, to proceed to sell such part of Barnaby Manor as may be sufficient to discharge the debts which shall have been proved to the satisfaction of the said commissioners. The decision in this case was made, not under any rule or practice of the court of Chancery, but in conformity to the peculiar provisions of this particular act of assembly. The practice under the act of 1785, ch. 72, has always been the reverse of that now contended for; and great injustice would be done to creditors by its change. If no sale of the fund provided by law for the payment of debts, is to be decreed, no creditor to be paid until all litigation as to claims against the deceased shall have terminated, the rights of creditors will be in a more deplorable condition than any wise system of legislation ever designed to place them. The exercise of that conservative power exerted by courts of equity in selling for the benefit of those concerned, property in litigation, and

preserving its fruits for those who may shew themselves entitled, would be arrested ; heirs and devisees, that they might continue in the possession and enjoyment of the real estate of their ancestor, liable to the payment of his debts, would be tempted to engage in and protract litigation with his creditors to an almost interminable duration, to the ruin and injury of creditors, and destruction of the property assigned by the law for the payment of claims. Permit the Chancery court to interpose, in the usual mode, its protecting power ; take possession of the property, and convert it into the appropriate medium for distribution, and creditors are subjected to no such delays and oppression. All parties will be interested in avoiding useless controversies. To such an objection, at such a time, and under the present circumstances, this court should listen with a most reluctant ear. With the account of the administration of the personal estate, as rendered by the executor, the complainant was satisfied. It contained all he wished to discover; he sought no relief as against the executor ; he therefore required no further account from him. Did any of the defendants, in their answers, call for such an account? No. Did either complainant or defendants ask of the Chancellor a statement of the claims against the deceased, as preliminary to a decree? Neither. With what kind of grace then, do they stand before this tribunal, seeking a reversal of the decree, because it was not ordered in the court below; even conceding that such an application, if applied for, would there have been granted. No account having been prayed for by any of the parties in the court below, it cannot be relied on in the appellate court as a ground for the reversal of the decree, say the house of lords in *Chamley vs. Lord Dunsaney,* 2 *Sch. and Lef.* 712.

It has also been insisted that the decree is erroneous, in not decreeing payment of the debts of the deceased, by a just contribution imposed upon the property of each devisee. Such a decree, it is manifest, it was not in the power of the Chancellor to have made, as no statement of the claims against the deceased had been made, or adjudicated on, by

the court; without which, a decree of payment by way of contribution was wholly impracticable. But if such statement had been made, and confirmed by the court, it would have been error in the Chancellor to have passed such a decree. That even as to the bank claim, a decree for its payment by contribution by the several devisees of *Marengo*, would not have been authorized. See 1 *Pow. mortgage*, 339, *note* (3), and *Hughes vs. Edwards*, 8 *Wheat.* 501. *A fortiori* would such a decree be unwarranted, in respect to the claims of creditors; the reasons against it in the latter case being far more numerous and controlling, than in the former. In fact the decree for contribution is not a decree affecting the rights of the complainant, or passed between him and the defendants, but is an adjudication between the defendants themselves, settling their rights and liabilities, in respect to each other, and is made after the claims against them, of the complainant and all other creditors of the deceased have been definitively adjusted.

In authorizing the sale of that part of *Marengo*, conveyed by *Fayette Gibson* to *Edward Lloyd*, it is insisted, that the decree is erroneous upon several grounds. 1st. It is urged that *Edward Lloyd*, having in his answers set up the defence of his being a *bona fide* purchaser for valuable consideration, without notice either of the claim of the complainant, or that the personal estate of the deceased was insufficient for the payment of his debts, is protected as such against all claims of the complainant, as a general creditor of the deceased.

On the existence of such protection, abstractedly considered, we mean to express no opinion, but to its existence in the circumstances under which it is here claimed, we cannot yield our assent. It is apparent from the answer of *Lloyd*, and his conveyance from *Fayette Gibson*, that at the time of the conveyance he knew that *Fayette Gibson* acquired title to the land conveyed, as devisee of his deceased father, *Jacob Gibson;* and whether such fact was actually known to him or not, is immaterial, the law imputes such knowledge as necessarily acquired in the examination of the title to the property

conveyed to him, and also imputes to him the knowledge of the provisions of the act 1785, ch. 72, sec. 5, which made *Jacob Gibson's* real estate chargeable with the payment of his debts in the event of his personal estate proving insufficient therefor. Possessing this knowledge, he was put upon the inquiry ; it was his duty to have ascertained whether the personal estate was sufficient for the payment of the debts of the deceased. Had he have used reasonable diligence in the examination of this fact, he would have found that when he received the conveyance from *Fayette Gibson*, the executor had passed no account shewing the payment of the debts, that there was then pending in *Talbot* county court, against the executors of *Jacob Gibson*, a suit for the recovery of the very debt which the complainant seeks to recover by his present bill, indeed it is manifest from the answer of *Lloyd* himself, that he knew the debts of the deceased had not been all paid out of the personalty. He states that the whole purchase money for the land conveyed to him was applied towards the payment of three enumerated debts of *Jacob Gibson*, and this application was made not by the executors, but by one of the devisees, who had sold a part of the property devised to him. It may be suggested that perhaps this payment of the deceased's debts was on account of the mortgage debt due by *Fayette Gibson* to *Edward R. Gibson*, the executor, as shewn by exhibit No. 8. But such an intimation is not warranted by the facts in proof before us, not only because no part of the mortgage debt was payable until more than twelve months afterwards, but because the debt to secure which the mortgage was executed, had no existence, until several months after the payments made out of the purchase money of the land conveyed to *Lloyd*. It is an evidence of singular neglect on the part of a purchaser that he should receive a conveyance for lands from a devisee, the value of the title to which in a great measure depended on the sufficiency of the personal assets for the payment of the testator's debts ; that he should by arrangement between himself and the devisee, who was not the executor, apply

the whole purchase money of the land conveyed to him, to the payment of three of those debts, one of which had continued due to himself between three and four years since the testator's death, and before its payment by the purchase aforesaid, and yet under all these circumstances, and during that period, he had no reason to suspect nor does it appear that he ever inquired into the sufficiency of the personal estate for the payment of debts.

The second ground assigned as error in the decree authorizing the sale of *Edward Lloyd's* part of *Marengo*, is that the whole purchase money therefor having been applied to the payment of *Jacob Gibson's* debts, the purchaser should be protected in his title. The answer to this is, that the facts sated in *Lloyd's* answer were traversed, and that no proof whatever has been offered to sustain them; that if full proof thereof has been offered, no devisee or person claiming under him, has the power of depriving the creditors of the benefit of obtaining the highest price which the property devised will produce, when offered at public sale under the proper authority. By making a private sale thereof, and applying the proceeds in payment of the debts of particular creditors, such a state of things should have its influence with the trustee in selecting the particular parts of *Jacob Gibson's* real estate, which it might be found necessary to sell; but does not divest the Chancellor of the power of decreeing the sale which possibly may be necessary for the payment of debts. The exercise of the discretion by the decree vested in the trustee as to the *quantum* and selection of the particular parts of the real estate to be sold, is always subject to the control of the sound discretion of the Chancellor, whenever its exertion is properly invoked.

Upon the principle of substitution, *Col. Lloyd*, or those claiming under him, will be subrogated to the rights of the creditors whose debts he has paid. Had the personal estate proved more than sufficient for the payment of debts, the devisees of *Marengo* might have called on the executor to the extent of such excess to redeem the mortgage, but they

have no equity as against the devisees of other parts of his real estate, which would authorize their being called on to contribute for such a purpose.

The 2d and 3d points filed by the appellants have been waived.

It is contended, that the allegations and prayer in the bill, did not authorize the Chancellor in allowing the complainant's claim to the extent to which he has decreed its payment.   If the specific prayer in the bill of complaint, to be paid this claim out of the realty, be regarded as praying the payment of the whole amount of the promissory note which he held, independently of any principle of substitution, and exclusively on the ground of its being a debt due by the deceased, for the payment of which there then remained in the hands of the executor no personal assets, it must be conceded that such a prayer could not be granted, according to the well established principles of equity, announced by this court in the case of *Gist's adm'rs vs. Cockey & Fendall,* 7 *Har. and John.* 134, and the case of *Collinson vs. Owens,* 6 *Gill and John.* 4.   But assume for the sake of argument that the complainant is not entitled to relief according to his specific prayer therefor, is he not entitled to full relief upon the general prayer contained in his bill    Nothing is better settled than that if a complainant cannot obtain the specific relief for which he prays, he may obtain any relief consistent therewith, warranted by the allegations in his bill, provided it contains a prayer for general relief.   Do the allegations in the bill warrant a decree for the payment out of the real estate, of the amount of the complainant's claim, is the consequent inquiry ?   In our opinion it does; it contains all the material statements of facts, necessary to shew the existence of the debt at the death of *Jacob Gibson,* and its subsequent non-payment!   It then charges that the personal estate has been exhausted in the payment of debts, and exhibits an account passed by the executor before the Orphans court, proving that fact, and shewing the name of each creditor, and the amount of the debt due him by the deceased, which

has been paid out of the personal assets, which is in effect the same thing as if the bill had at full length, and in the most formal manner, charged that *Jacob Gibson* died indebted to each of the creditors, *nominatim*, who are mentioned in the said account, for the amount therein stated to have been paid to them, and that such payments had been made out of the personal assets of the deceased. Upon a bill with such a statement of facts, and prayer for general relief, could a court of equity deny to the complainant the right of substitution? Assuredly not. The right of substitution is not a matter of fact, which a party must allege to entitle him to its benefit, but is the conclusion of law or equity drawn by the court from the statement of facts out of which it arises. The solicitors of the defendants contend, there is no allegation in the bill, or proof in the cause, that the claims mentioned in the account exhibited from the Orphans court, are chargeable upon the real estate, to the extent of the insufficiency of the personal assets. If the substance and effect of the bill be as we assume it, such an allegation is wholly unnecessary; it is the necessary inference of law to be drawn by the court from the act of 1785, ch. 72, when the facts are proved or admitted before it, unless such inference be repelled by some plea or matter in avoidance. There is no such plea or matter of avoidance, except as to the *Tiltons*, relied on or proved in the record before us, and as between the complainant and defendants, no such plea or matter of avoidance can ever arise upon any future stage of the proceedings in this cause.

The complainant's claim as far as the correctness of the Chancellor's decree is involved, must stand or fall upon the proofs and proceedings now in the record. Can it stand this test, is the next question to be inquired into?

If the allegations of the bill be by the answers admitted, or being put in issue be proved, or being neither admitted or denied be proved, or a decree *pro confesso* be had against the defendants, as against all the defendants who are *sui juris*, the result is the same. A decree for the sale of the real estate for the payment of the complainant's claim, passes as

a matter of course, he being substituted as against the realty, to the rights of those creditors whose claims have been satisfied out of his proportion of the personalty. How then in these respects stands the complainant before us? In a very different condition from the complainant in *Collinson vs. Owens*, where the defendant relied on the statute of limitations, and the false and fraudulent character of the claims, under which the right of substitution was claimed. Here the statute of limitations has been in no wise interposed, to arrest his pursuit of the right of substitution.

As far as concerns the interests of *Edward R. Gibson*, *Frances Tilton*, *Nancy Gibson*, *Joseph W. Reynolds* and *Anne* his wife, and *Rigby Hopkins*, he has obtained a decree *pro confesso*, and his right to a decree against them cannot therefore be questioned.

Is he entitled to the same relief against the defendants who have answered? we will proceed to examine. The answer of *Fayette Gibson* admits all the material allegations charged in the bill, and consequently as to him, there is no error in the decree appealed from.

As to the heirs of *Harriet Bennett*, she by her answer having admitted none of the claims paid by the executor, in virtue of which substitution is sought, no decree could have been passed against them, founded on such substitution; but the complainant's debt *proprio jure*, having been admitted by *Harriet Bennett*, and indeed fully established by proof, the property devised to her becomes liable to sale, to meet its just contribution to the payment of so much of the complainant's debt as remains unsatisfied.

After deducting therefrom its *pro rata* distribution of the personalty. The lands conveyed by *Fayette Gibson* to *John W. Blake* stand in the same situation.

Several objections to the decree founded on the answer of Edward Lloyd have been urged; some of which form no ground for the reversal of the Chancellor's decree, and may perhaps never necessarily arise in the cause; or if they do, it is after the proceeds of sale, under the decree, are brought

into the court for distribution. Of this character is the ex-
ception taken on behalf of the devisees of *Marengo*, that by
the agreement between the *Farmers' Bank* and *Lloyd*, (to
which it does not appear that the devisees of *Jacob Gibson*
ever assented,) the bank has released a portion of the secu-
rity which it held for the payment of its debts, and that to
the extent of the security thus relinquished, in the proportion
that the value thereof bears to the value of *Marengo* entire,
they are to be exonerated from the payment of the mortgage
debt to the bank. If it should turn out that the residue of
that part of *Marengo* devised to *Fayette Gibson*, and not by
him conveyed to *Edward Lloyd* or *John W. Blake*, united
with the other parts of *Marengo*, to which *Fayette Gibson*
was entitled, after paying their just contribution towards the
mortgage debt, and all other debts of the deceased, should
prove inadequate to the payment of that portion of the mort-
gage, which the part of *Marengo* devised to *Fayette Gibson*
was bound to contribute; then in reference to the other devi-
sees, owners of *Marengo*, the mortgage debt to the bank
must be deemed satisfied and paid, to the extent of such
inadequacy.

The principle upon which the other parts of *Marengo*,
owned by *Fayette Gibson*, *otherwise than by devise*, are sub-
jected to the payment of the contribution properly chargeable
on the part of *Marengo*, *devised to him*, is, that by the cove-
nants in his deed to *Lloyd*, he is bound to indemnify him
against the mortgage debt, that but for the agreement between
*Lloyd* and the *Bank*, the land conveyed to *Lloyd* would have
been answerable for its proportion of the *Bank* debt; that a
part of the consideration of the agreement, and one of its
express stipulations was, that the *Bank* should retain its right
of enforcing the payment of its debt, out of all that part of
*Marengo* not embraced by the conveyance to *Lloyd*. If then
*Fayette Gibson* seeks against the *Bank*, protection in a court
of equity, under this agreement, he must hold himself bound
by its stipulations. The exemption which he could success-
fully claim, and which could be extended to him, rests upon

the broad principles of natural justice and equity; and an application for it could not be countenanced by a court of Chancery, but on his acquiescence in all the provisions of the agreement.

It has also been objected to the decree on the behalf of the devisees of *Jacob Gibson,* other than those of *Marengo,* that the *Bank,* by its agreement, having surrendered a portion of its security for the payment of its debt, thereby discharges them from liability, to the extent of the loss sustained by such surrender. Of the soundness of this position there can be no doubt, but that it shews error in the Chancellor's decree so as to authorize its reversal, is by no means apparent.

In the first place *non constat,* that any loss ever will accrue to the complaining devisees, in consequence of the agreement between the *Bank* and *Lloyd.* It may be that *Fayette Gibson's* remaining interest in the lands devised to him, so far as the same are properly chargeable therewith, is amply sufficient to pay his proportionate contribution to the payment of the mortgage, and other debts of his deceased father. We cannot, *a priori,* assume the contrary, and make it the basis for reversing the decree. But suppose such an assumption were made, is there any thing in the decree inconsistent therewith? It is true it directs a sale of the real estate of *Jacob Gibson,* or so much thereof as may be necessary for that purpose, for the payment of the mortgage claim of the defendants, *The President, Directors and Company of the Farmers' Bank of Maryland,* and the claim of the complainant as stated in the proceedings, and all other debts due from the said *Jacob Gibson, deceased.* But it would be a perversion of the meaning of the decree, to interpret it, as directing the proceeds of sale to be rateably distributed between the *Bank,* the complainant and all other creditors, without reference to the liens, and priorities of the several claimants, to the proceeds of sale of the respective portions of property sold; or that if when applying the avails of the mortgaged premises to the payment of the mortgage debt, it should appear upon the established principles of equity, that a larger

portion thereof was extinguished and satisfied by the mortgaged estate, than was in point of fact paid to the mortgagee, the Chancellor would inequitably award to the mortgagee, when standing before him as a general creditor, a larger proportion of the proceeds of the sale of the residue of the real estate of the deceased, than was actually due. Although the decree directs the sale for the benefit of all the creditors, and against all the devisees, its meaning was *reddendo singula singulis*, according to their respective equities, as apparent from the record.

In truth these questions were not presented, by the facts before the Chancellor, at the time of the decree; they may or may not ever arise in the cause, and can regularly only do so, when the proceeds of sale are brought into court for distribution, and consequently can form no ground for the reversal of the present decree.

The decree is further objected to, because the rights of the widow, under the will of her husband, have not been reserved; and this objection we think well founded. By the 5th section of the act of 1798, ch. 101, sub ch. 13, speaking of the bar which is created by that act of assembly, by the widow's acceptance of the devises made to her by the will of her husband, it is declared to be the intent of the act of assembly, and consonant to justice, that a widow accepting or abiding by a devise in lieu of her legal right, shall be considered as a purchaser for a fair consideration. The decree of the Chancellor makes no reservation of the rights of the widow under the will of *Jacob Gibson*, but declares that the purchasers from the trustee shall hold the property sold to them, free, clear and discharged from all claims of the parties to this cause, of whom *Rebecca Gibson*, the widow, is one. To conform to the act of assembly the decree should have ordered the sales to be made by the trustee subject to the devises made to *Rebecca Gibson*, by the last will and testament of the deceased. There is no intimation in the bill, or proof in the cause, that the provision made for the wife by the will is fraudulent, in being greater than the value

15      v.10

of her common law rights, and therefore unjust and injurious to creditors. She is therefore entitled to the benefit of all the bequests and devises made to her by the will as a purchaser for a fair consideration.

The reversal of the decree is also urged upon another ground, which we think supported by the construction always heretofore given to such decrees. In the commencement of the decree, the Chancellor declares, that the claim of the complainant is established to his satisfaction, except as against the defendants, *James Tilton* and *Clara Tilton*, to the extent of whose interest, it is barred by the act of limitations, and in a subsequent part of the decree, he orders that the real estate of the said *Jacob Gibson*, deceased, or so much thereof as may be necessary, be sold, for the payment of the claim of the complainant, meaning of course, as he has above stated it to be established, except as against the *Tiltons;* with that exception, the whole claim of the complainant is decreed to be paid, out of the proceeds of sale, of all the devised property held by the defendants.

According to the views of this court, as expressed in the preceding parts of this opinion, this decree does injustice to the following defendants, and is therefore erroneous as to them ; viz. *Edward Lloyd, Harriet Bennett* and *John Wilson Blake's* heirs. But inasmuch as sufficient appears in the record, to shew that a decree for the sale of the real estate of *Jacob Gibson*, or so much thereof as may be necessary for that purpose, for the payment of his debt, ought to have been passed; this court will *not* reverse the *entire* decree for the errors which we have recognized as imputable to it; but will affirm the decree without costs in this court, so far as it relates to the sale of said real estate, for the payment of the debts due by the said *Jacob Gibson*, and particularly the claim of the complainant, as the same shall hereafter be stated by the auditor of the court of Chancery, under the direction of the Chancellor, upon the proceedings, exhibits, and proofs now in the record; and in accordance with the view expressed by this court, in the aforegoing opinion, provided

that such sale shall not be made of that part of the said real estate to which the defendant, *Clara Tilton*, is entitled, and provided, that in such sale, the rights of the defendant, *James Tilton*, and of the defendant, *Rebecca Gibson*, under the last will and testament of her husband, *Jacob Gibson*, be expressly reserved. The right of substitution is to be allowed in stating the complainant's claim, and those of all other unpaid creditors, as against all the defendants, (except *Rebecca Gibson*,) against whom a decree *pro confesso* has been passed; but such right *is to be denied* to the complainant, as against the heirs of *Edward Lloyd, Harriet Bennett* and *John Wilson Blake;* nor is it to be extended to the other creditors of *Jacob Gibson*, against the heirs of the last mentioned three defendants, unless such creditors shall shew themselves entitled thereto, by the necessary proofs and vouchers taken under a commission issued for that purpose, or before the auditor of the court of Chancery.

It is thereupon this ninth day of February, in the year eighteen hundred and thirty-nine, by the court of Appeals for the Western Shore, adjudged, ordered, and decreed, that the decree of the court of Chancery passed in this cause on the 13th day of May, in the year eighteen hundred and thirty-six, be and the same is hereby affirmed, so far as the same is consistent with the annexed opinion, and so far as the same is inconsistent therewith, the said decree is hereby reversed and annulled, and the sale of the real estate hereby decreed, is to be subject to the rights of *Rebecca Gibson*, the widow of the deceased; and that part of the Chancellor's decree, which directs a sale of the real estate of *Jacob Gibson*, for the payment of the mortgage debt due *The President, Directors and Company of the Farmers' Bank of Maryland*, is to be understood only, as applicable to the sale of the mortgaged premises; whenever the Bank may claim in its character of a general creditor, it comes in, as do other creditors, not named in the bill; and the reservation in said decree, of the rights of the said *James Tilton*, is not to be understood as applying to any part of the mortgage premises to the preju-

dice of the rights of *The President, Directors and Company of the Farmers' Bank of Maryland.*

And it is further adjudged, ordered and decreed, that the costs incurred by the appellees in this court, shall be paid to them out of the proceeds of any sale or sales which may be made under this decree. And that this cause be and the same is hereby remanded to the court of Chancery, with power to pass such further decrees or orders as may be necessary to carry into effect this decree.