(Decided 18th December, 1889.)

---

## JOHN VAN BIBBER *vs.* MARGARET A. REESE.

*Decedent's Real estate—Purchase from Devisee—Creditors of Decedent.*

Section 109 of Article 93 of the Code, provides that an executor shall give notice of his appointment, and shall warn the creditors of the deceased to exhibit their claims properly authenticated, within six months. Section 110 of the same Article authorizes the executor to report to the Orphans' Court that such notice has been given, and requires the Court, upon being satisfied of the fact, to order said report to be recorded. Section 188 of Article 16, provides that where any person dies leaving real estate, and not leaving personal estate sufficient to pay his debts and costs of administration, the Court, on suit by any of his creditors, may decree that the real estate, or so much thereof as may be necessary, shall be sold to pay his debts. HELD:

That where the records of the Orphans' Court show that an executrix, who was the sole residuary devisee and legatee, has, after giving the required notice to creditors, filed her final account showing that she has paid all the debts proved against the estate and many others, a legacy, and the costs of administration, and that a large balance remains in her hands, a purchaser from her of a house devised, in good faith, and for value, and without knowledge of any outstanding and unsettled debts of the decedent, will be protected against any and all of his creditors subsequently preferring claims.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court. The decree from which the appeal was taken, was passed by Judge DENNIS.

The cause was argued before ALVEY, C. J., STONE, ROBINSON, BRYAN, and McSHERRY, J.

*Wm. Pinkney Whyte, Attorney-General,* for the appellant.

*Frank Gosnell,* and *John Prentiss Poe,* for the appellee.

McSHERRY, J., delivered the opinion of the Court.

The bill in this case was filed by the appellee against the appellant to procure the specific performance of a contract for the sale of real estate located in the City of Baltimore. The facts, upon which the main and the important question here involved depends, are these: Edwin Reese, the husband of the appellee, died on November the twenty-second, 1887. By his last will and testament, which was admitted to probate by the Orphans' Court of Baltimore City shortly after his decease, he bequeathed to his father a legacy of $500, and made his widow his sole residuary devisee and legatee, and appointed her executrix. Letters testamentary were

issued to her and she at once gave notice, under *Art.* 93, *sec.* 109, *of the Code,* to the creditors of her deceased husband's estate, warning them to exhibit their claims, properly authenticated, on or before the thirty-first day of May, 1888. She subsequently made report to the Orphans' Court that she had given this notice, and her report was ordered to be recorded pursuant to *secs.* 110–12 *of Art.* 93 *of the Code.* On the second of November, 1888, she settled an account in the Orphans' Court. By this account it appears that she paid all the debts proved against the estate, and many others, and the legacy of $500, and the costs of administration, and that there remained in her hands a balance amounting to $7,704.10. This balance belonged to her as residuary legatee. In addition to the personal estate included in this account, Mr. Reese owned in fee simple, at the time of his death, a house situated in the City of Baltimore. This house, which is the real estate involved in the pending litigation, the appellee acquired under the will of her husband. On the third of September, 1888, Mrs. Reese sold the house to the appellant, Dr. Van Bibber, for $25,000, and on the twentieth of the same month he took possession of it. We make no reference to the circumstances under which possession was taken, because they have no relation to the only question which we deem it necessary to consider and decide. Shortly after the memorandum of sale was signed, it was suggested that possibly Mr. Reese owed debts beyond the amount of the personal estate left by him, and that, therefore, his creditors might follow his real estate, and subject it to the payment of those debts, even though the appellant had purchased it from the devisee, and had paid her for it in full. This suggestion, after much fruitless negotiation, ultimately led Dr. Van Bibber to decline complying with the agreement of September the third; and on January the third, 1889, Mrs. Reese filed

the bill now before us, for a specific performance of that contract. The relief prayed was granted by the Circuit Court of Baltimore City, and a decree was signed accordingly. From that decree Dr. Van Bibber has appealed.

*Section* 188 *of Art.* 16 of the Code gives rise to the main controversy in the case. That section, which is a codification of the *Act of* 1785, *ch.* 72, *sec.* 5, and its various amendments, provides that "where any person dies, leaving any real estate in possession, remainder or reversion, and not leaving personal estate sufficient to pay his debts and costs of administration, the Court, on any suit instituted by any of his creditors, may decree that all the real estate of such person, or so much thereof as may be necessary, shall be sold to pay his debts, &c." By the common law, as is well known, the heir of a deceased debtor was only bound for the payment of the specialty debts of his ancestor, because of the express terms of the obligation; and then only in respect and to the extent of the real assets descended. And if a debtor, instead of suffering his real estate to descend to his heirs devised it to any person; or if the heir aliened the land before an action was brought against him, the creditor was without a remedy. To obviate this injustice the Statute of 3 *and* 4 *W. & M.,* *ch.* 14, was enacted, and the heir and devisee were made liable to the extent of the value of the land so acquired and then sold by them, though the land itself, in the hands of a *bona fide* purchaser from either of them, was declared to be entirely free from the claims of the decedent's creditors. But the legislation of this State, as embodied in the section quoted from the Code, goes much further, and makes the land devised or descended liable to be sold for the payment of any demand due by the decedent, if the personal estate left by him should be insufficient to discharge all his debts and the costs of

Van Bibber *vs.* Reese.

administration. Obviously this liability is not absolute but only conditional. It depends upon the insufficiency of personal assets. Now, the practical and important question before us is, how long does that liability continue? Or, in other words, is there any point of time after which the heir and devisee may sell the land to a *bona fide* purchaser without the latter incurring the risk of having the real estate so purchased by him sold, afterwards, for the payment of the ancestor's or the testator's debts? If there be such a point of time, what is it? ' This precise question has never been decided by this Court.

Whilst there is not in the Code, as in the Statute of 3 *and* 4 *W. & M.*, any express saving in favor of a *bona fide* purchaser, there must, of necessity, be some point of time when land descended or devised may be said to be free from this conditional liability. To hold otherwise would, substantially, convert the section quoted into a prohibition upon the alienation of such land—an effect manifestly never contemplated. or intended by the framers of that legislation. Such property would be placed *extra commercium* almost indefinitely; because as long as there remained a *possibility* that debts might appear, there would remain a like possibility that the property would be made liable for their payment, no matter in whom the title might chance to be. It would not be difficult to suggest numerous instances, where liability might arise on a guardian's or a trustee's bond many years after its date; or on other obligations which might mature at very distant periods. These possible claims would be sufficient to prevent conveyances for years and years, in palpable contravention of the general policy of the law, which disfavors unlimited restraints on alienations. It may fairly be concluded, then, that there is some point of time after which a *bona fide* purchaser may safely purchase such devised or descended real estate. Now, when can he do so?

We have said that the land of a decedent is, under the express language of the Code, only contingently or conditionally liable to be sold for the payment of his debts. His personal estate is the primary fund to which resort must be had. If that be sufficient, a Court of equity has no jurisdiction to decree a sale of his real estate for the payment of his debts. It is, consequently, only when it appears to the Court that the personal assets are not sufficient, that its jurisdiction can be exercised. The law has created a different tribunal for the administration of the personal estate of a decedent. It has pointed out with exactness and particularity what course is to be pursued, from the grant of letters testamentary or of administration, down to the final settlement of the estate in the Orphans' Court. By *sec.* 109 *of Art.* 93, creditors are to be notified to file their claims within six months. This enables the executor or administrator to ascertain the extent of the indebtedness. Under other sections he is required, within limited periods, to return and file in the Orphans' Court inventories of the whole personal estate, to the end that its value may be known, and that it may be applied, if necessary, to the payment of debts. Under *sec.* 1, after the notice provided for in *sec.* 109 has been given, the executor or administrator may, within twelve months after the date of his letters, make a settlement of the personal estate; and the manner of his proceeding is carefully and minutely defined in the various sections of that Article. He is then required to make oath or affirmation to his account, that its verity may receive the strongest possible sanction. When all this has been done, in exact conformity with the law, the fact as to whether the personal assets are or are not sufficient to pay the known debts of the decedent and the costs of administration, is clearly and formally, though, of course, not conclusively, established in a tribunal having jurisdiction over the administra-

tion of that personal estate. If the final account, thus settled pursuant to all the provisions, safeguards and requirements of our testamentary system, shows upon its face that the personal estate is sufficient to pay all debts and the costs of administration, the sole condition upon which a Court of equity may decree the sale of the decedent's real estate, for the payment of debts, does not then exist. The person entitled to that real estate, either by devise or descent, may undoubtedly then sell and convey it; and the person who *then* purchases it in good faith from the devisee or heir, without actual knowledge of outstanding and unsettled debts of the decedent, would most assuredly be protected as a *bona fide* purchaser against any and all creditors of the decedent subsequently presenting or preferring claims. This result is a necessary one, and we cannot escape it without adopting the other alternative, viz., that, notwithstanding the personal estate is shown to be amply sufficient, the real estate will still continue subject indefinitely, to be called on for the payment of *merely possible* obligations. We must also treat the settlement in the Orphans' Court as an idle and meaningless form, importing and signifying literally nothing. That settlement, it is true, is not conclusive but only *prima facie*, and may be stricken down and avoided when appropriate proceedings are taken for that purpose, and properly supported by evidence. But, whilst it stands unimpeached and unquestioned, it imports verity, and furnishes notice that the decedent's real estate is not liable to be sold to satisfy the demands of his creditors.

We hold, therefore, when the records of the Orphans' Court, made in conformity with the law, show a final settlement of the personal estate, and when the settlement indicates that all proved debts and the costs of administration have been paid in full, and that there is still a balance in the hands of the executor or adminis-

trator, a purchaser is justified in assuming, *if he have not actual knowledge to the contrary*, that all debts have been paid and that the land is exonerated from its conditional liability. Should he, under these circumstances, purchase, in good faith and for value, from the heir or devisee, he will be protected as a *bona fide* purchaser, in the strictest sense of the term, even though debts amounting to more than the personal estate should afterwards be discovered. The purchaser of a title, perfect on its face, for a valuable consideration, takes it discharged of every equity of which he had no notice. *Bigley vs. Jones*, 114 *Pa. St.*, 517. He is, of course, charged with notice of every defect or equity or infirmity which appears in any of the muniments of that title. *Garrard vs. P. & C. R. R. Co.*, 29 *Pa. St.*, 154. Therefore, in *Green vs. Early & Townshend*, 39 *Md.*, 223, the purchaser was charged with notice that the property had passed from the husband to the wife during coverture in prejudice of the rights of the husband's subsisting creditors; and the purchase was consequently held to be subject to the rights of those creditors. But the title here is perfect on its face. The purchaser was undoubtedly bound to know that the property was devised to Mrs. Reese, because an examination of the title will disclose that fact. He was also bound to know that the same property was, in consequence of being so devised, conditionally liable to be sold at the suit of creditors for the payment of the testator's debts. The purchaser is also required to examine the records of the Orphans' Court where the personal estate has been administered, because the law charges him with notice of every fact which those records disclose, with reference to the personal assets. Such an examination will show that the debts of Mr. Reese and the costs of administering his estate have all been fully paid. The purchaser could not possibly extend that examination any further. Where

else ought he to make inquiry? There is nothing, then, in this case to give him the slightest notice that the land purchased by him can ever be reached by creditors of Mr. Reese; because, on the contrary, the information which the records do, in fact, impart, is, that there are no unsatisfied creditors at all. The title is not only perfect on its face, but the notice given by the records is, that the land is *not* subject to the conditional liability created by the several Acts of Assembly forming the section heretofore referred to. It is difficult to imagine a stronger case for the application of the doctrine that a *bona fide* purchaser—"a favorite in the eyes of Courts of equity," 1 *Story's Eq.*, sec. 434—will take the land discharged from all equities of which he had no actual or constructive notice.

This conclusion imports no new provision into the Code, and does not strike out any of the language already there. Keeping in view the state of the common law, and the mischiefs intended to be reached by the Statute of 3 & 4 *W. & M.*, we are fully warranted in adopting that construction of the Code which will give entire effect to the intention of the Legislature, and at the same time will avoid the evil consequences to which a literal adherence to the words of the statute, without reference to their object, would most assuredly lead. We do not deem it necessary to cite from the text writers or from decided cases the elementary rules governing the construction of statutes, and which fully sustain the interpretation adopted in this instance; because those rules are too familiar to need a statement of them in this opinion.

The records of the Courts are notice to every one, and all persons are bound to know the facts they disclose. If those records show that the personal estate is insufficient to pay debts, or if they show that the personal estate is still unsettled, notice is thereby imputed to all

who may deal with the real estate that the latter is or may be made liable under the statute; and no one purchasing from an heir or a devisee, under such circumstances, could pretend to be a *bona fide* purchaser without notice. This is what was decided in *Gibson vs. McCormick*, 10 *G. & J.*, 65. But neither in that case nor in *Green vs. Early & Townshend*, 39 *Md.*, 223, was the exact question now before us passed upon or decided. In *Gibson vs. McCormick*, in disposing of the defence of a purchaser of part of a deceased's real estate from his devisee, that the purchase was for value, and without notice of debts, or that the personal estate was insufficient to pay them, the Court said: "On the existence of such protection, abstractedly considered, we mean to express no opinion, but to its existence in the circumstances under which it is here claimed, we cannot yield our assent. It is apparent from the answer of Lloyd, and his conveyance from Fayette Gibson, that at the time of the conveyance he knew that Fayette Gibson acquired title to the land conveyed, as devisee of his deceased father, Jacob Gibson; and whether such fact was actually known to him or not, is immaterial; the law imputes such knowledge as necessarily acquired in the examination of the title to the property conveyed to him, and also imputes to him the knowledge of the provisions of the *Act of* 1785, *ch.* 72, *sec.* 5, which made Jacob Gibson's real estate chargeable with the payment of his debts in the event of his personal estate proving insufficient therefor. Possessing this knowledge, he was put upon the inquiry; it was his duty to have ascertained whether the personal estate was sufficient for the payment of the debts of the deceased. Had he used reasonable diligence in the examination of this fact, he would have found that when he received the conveyance from Fayette Gibson, the executor had passed no account showing the payment of the debts, that there was then

pending in Talbot County Court, against the executors of Jacob Gibsou, a suit for the recovery of the very debt which the complainant seeks to recover by his present bill; indeed it is manifest from the answer of Lloyd himself, that he knew the debts of the deceased had not been all paid out of the personalty.''. A portion of this language was quoted with approval in *Green vs. Early & Townshend*, 39 *Md.*, *supra.* The case before the Court in 10 *G. & J.*, 65, was that of a person purchasing from a devisee with actual knowledge that the personal estate was insolvent. But even had he not had actual notice, the condition of the personal estate, as disclosed by the records of the Orphans' Court of Talbot County, gave him constructive notice that the debts had not been paid, and he would have been visited with the consequences resulting from that notice. The Court was careful to refrain from expressing any opinion as to whether a *bona fide* purchaser without notice, actual or constructive, would be protected—that question was not before it at all.

The case of *Zollickoffer, Ex. vs. Seth, Adm'r*, 44 *Md.*, 359, much relied on by the appellant, decides a question totally different from the one involved here. It was held there that, though the personal estate had been fully and regularly settled, whereby the executor was exonerated from liability for debts not known to him when he passed a final account in the Orphans' Court, still the creditor was not without a remedy against the legatees and distributees of the debtor, because the legatees and distributees were not entitled to any thing except the surplus of the assets after all the debts were paid. But that is far from being the case at bar. Had the legacy been a specific article of personal property, and had a third person, after the final settlement of the personal estate, purchased that article in good faith from the legatee, and had a creditor of the testator

sought to subject the property so purchased and in the hands of the, *bona fide* purchaser to the payment of the decedent's debts, the case thus presented would have been analogous to the question under consideration here.

The contract between the appellant and the appellee is fully set forth in the bill of complaint and an accompanying exhibit, and is admitted by the answer. As thus presented it is definite, certain and entirely free from ambiguity, and capable of being specifically enforced. *Wilks vs. Burns, et al.*, 60 *Md.*, 67. The title which Mr. Reese had is admitted to have been in fee, and free from incumbrances and liens. His personal estate has been settled, and the records of the Orphans' Court show a considerable balance in the hands of his executrix, and there is the most explicit proof on her part that there are no other debts due by her husband's estate that she is aware of. Under these circumstances, the title which Dr. Van Bibber will acquire from Mrs. Reese will be absolutely impregnable.

We have made no allusion to the fact that Mrs. Reese paid a large debt not proved against the estate, but due by her late husband, and that she paid it out of her own funds, because these circumstances can have no possible bearing upon the decision of this case in any way whatever.

Though the account passed by Mrs. Reese is called her *first* account, it was in fact a *final* account. She accounted therein for the whole of the personal estate, paid all the debts and costs of administration, and took credit therefor, and exhibited a balance in her hands. She sustained the two-fold character of executrix and legatee, and after the lapse of the time for the settlement of the estate, the law will treat this balance as in her hands as legatee. *Watkins, Adm'r vs. State, &c.*, 2 G. & J., 225; *State, use of Gable, et al. vs. Cheston & Carey*, 51 *Md.*, 375. Where there is nothing left to be done but

to make distribution, the account is a final one. *Biays vs. Roberts, Adm'r*, 68 *Md.*, 510.

The learned Judge of the Circuit Court, in the opinion filed by him, based the appellee's right to a specific performance on the proposition that one who enters and continues in possession of property under a contract of sale, can not be allowed, whilst thus affirming the contract, to repudiate it by refusing to pay the purchase money. Without expressing any opinion as to whether this doctrine is applicable to the case at bar, we shall affirm the decree for the reasons we have given, and upon the broad ground that no creditor of Mr. Reese can ever reach the property by any proceeding whatever.

*Decree affirmed, with costs.*

(Decided 18th December, 1889.)