### Including Cases of January, April and October Terms, 1922.

JAMES W. SEAMAN et al.

*vs.*

GEORGE W. SEAMAN et al.

*Executors and Administrators—Notice to Creditors—Bona Fide Purchaser.*

The provision of Acts 1912, ch. 146 (Code, vol. 3, art. 93, sec. 109A), for administration on the estate of a decedent leaving real estate but no personal estate within the State, and providing for notice to creditors in such case, does not affect the rule, previously existing, that, in the case of administration on the estate of one leaving personal property in the State, if notice to creditors, as provided in Code, Art. 93, sec. 109, is given, and all the claims filed in the orphans' court are settled, no claims, not filed prior to the final settlement of the estate in that court, can be presented against the real estate in the hands of a purchaser in good faith.

*Decided March 22nd, 1922.*

Appeal from the Circuit Court for Washington County, In Equity (WAGAMAN, J.).

Petition by James W. Seaman, filed in the cause of James W. Seaman et al. vs. George W. Seaman et al., praying the passage of an order directing the distribution of purchase money arising from the sale of certain property under decree

of court in said cause. From an order dismissing such petition, petitioner appeals. Reversed.

The cause was submitted on briefs to Boyd, C. J., Briscoe, Thomas, Pattison, Urner, Stockbridge, Adkins, and Offutt, JJ.

*Clyde H. Wilson* and *Oswald & Oswald,* for the appellant.

*Levin Stonebraker,* for the appellee.

Offutt, J., delivered the opinion of the Court.

Anna M. Whelan, late of Washington County, at the time of her death was seised and possessed of both real and personal property. She died intestate and letters of administration on her estate were in due course granted to James W. Seaman. The notice to creditors provided for in section 109, article 93, Code Pub. Gen. Laws of Maryland, was duly given, all debts and claims against the estate properly proven, paid and satisfied, a balance, remaining in the hands of the administrator after the satisfaction of all such debts, claims and costs, divided among the distributees, and a final administration account showing these facts was on September 16th, 1921, filed and approved.

On February 26th, 1921, Clyde H. Wilson and Edward Oswald, Jr., trustees appointed to sell the real estate of the decedent, Anna M. Whelan, sold to Edgar S. and Corrinne S. Darner a part of such real property for $6,000, which sale was reported to and, on March 30th, 1921, ratified by the Circuit Court for Washington County. The purchase money, instead of being distributed to those entitled, was by order of the court held by the trustees until its further order. No further order was passed, however, and on October 29th, 1921, a petition was filed in the case by James W. Seaman, an heir at law of Anna M. Whelan, setting out the passage of a final administration account in the estate of Anna M. Whelan and the other facts to which we have referred, and

praying the passage of an order directing the distribution of
the purchase money in the hands of the trustees. The pur-
chasers answered this petition, and admitted the facts stated
in it, but denied that the petitioners were entitled to a dis-
tribution of the purchase money because, they contended,
creditors of Anna M. Whelan, notwithstanding the notice to
creditors and the final and complete administration of her
estate in the Orphans' Court of Washington County, could
still prosecute their claims against the real estate, on the
theory that the provisions of 109A, article 93 of the Code
Pub. Gen. Laws of Maryland, were applicable to the facts of
this case, and that the notice to creditors in the Whelan es-
tate, while conforming to the requirements of section 109,
article 93 of the Code Pub. Gen. Laws of Maryland, was not
in accordance with the requirements of 109A of the same
article.

The question having been submitted on petition and answer,
the lower court accepted the theory of the purchasers and dis-
missed the petition, and from that order this appeal was
taken.

The reasons impelling the court to that conclusion appear
in a very interesting and elaborate analysis of the provisions
of sections 109 and 109A, art. 93, Code Pub. Gen. Laws of
Maryland contained in the opinion of the lower court.

After a careful examination of the statutes and the authori-
ties cited in that opinion we are, however, unable to agree
with the conclusion reached, since, in our opinion, section
109A, article 93 *Ibid.*, is not applicable to the facts of this
case.

It is conceded that the notice to creditors, provided for in
section 109, *Ibid.*, was given, and that all claims filed in the
orphans' court against the estate of Anna M. Whelan have
been settled. Under such circumstances no claims against
that estate, not filed in the orphans' court prior to the final
settlement of the estate in that court, can be presented
against the real estate in the hands of a purchaser in good
faith for value without notice.

This case, in its essential particulars, cannot be dis-
tinguished from the case of *Van Bibber* v. *Reese*, 71 Md. 608,
and unless the effect of that case has been nullified by sub-
sequent legislation, it furnishes a complete answer to the ap-
pellant's contention. In that case, as in this, the decedent
left both real and personal property; the notice to creditors
required by section 109, article 93, Code Pub. Gen. Laws of
Maryland was given, and a final account stated, which showed
that, after paying all claims proved against the estate, there
remained in the hands of the executor there, as there re-
mained in the hands of the administrator here, a balance for
distribution.

In speaking of the liability of the land of a decedent for the
payment of his debts, the Court in that case said: "We have
said that the land of a decedent is, under the express language
of the Code, only contingently or conditionally liable to be
sold for the payment of his debts. His personal estate is
the primary fund to which resort must be had. If that be
sufficient, a court of equity has no jurisdiction to decree a
sale of his real estate for the payment of his debts. It is,
consequently, only when it appears to the court that the per-
sonal assets are not sufficient, that its jurisdiction can be
exercised," and, in speaking of the effect of a final adminis-
tration account on that liability, it was further said: "If
the final account, thus settled pursuant to all the provisions,
safeguards and requirements of our testamentary system,
shows upon its face that the personal estate is sufficient to pay
all debts and the costs of administration, the sole condition
upon which a court of equity may decree the sale of the
decedent's real estate, for the payment of debts, does not then
exist. The person entitled to that real estate, either by devise
or descent, may undoubtedly then sell and convey it; and the
person who then purchases it in good faith from the devisee
or heir, without actual knowledge of outstanding and unset-
tled debts of the decedent, would most assuredly be protected
as a *bona fide* purchaser against any and all creditors of the

decedent subsequently presenting or preferring claims. * * *
We hold, therefore, when the records of the orphans' court,
made in conformity with the law, show a final settlement of
the personal estate, and when the settlement indicates that
all proved debts and the costs of administration have been
paid in full, and that there is still a balance in hands of the
executor or administrator, a purchaser is justified in assum-
ing, if he had not actual knowledge to the contrary, that all
debts have been paid and that the land is exonerated from its
conditional liability. Should he, under these circumstances,
purchase, in good faith and for value, from the heir or
devisee, he will be protected as a *bona fide* purchaser, in the
strictest sense of the term, even though debts amounting to
more than the personal estate should afterwards be discov-
ered. The purchaser of a title, perfect on its face, for a
valuable consideration, takes it discharged of every equity of
which he had no notice."

It is contended, however, that by chapter 146 of the Acts
of 1912, codified as section 109A, article 93, Code Pub. Gen.
Laws of Maryland, the law has been so modified that the
principles announced in the case from which we have just
quoted are no longer applicable to such facts as were then
before the court, and hence are not applicable to the facts
before us in this case.

At the time *Van Bibber* v. *Reese, supra,* was decided, ad-
ministration could only be granted in this State in cases where
the decedent died intestate, leaving personal property in this
State. Where he left real but no personal property there
could be no administration (*Grimes* v. *Talbert,* 14 Md. 172),
and therefore no forum in which claims against the estate
could be filed or prosecuted except in a proceeding brought
in a court of equity to subject the land to the payment of the
debts of the decedent. But in the absence of such a proceed-
ing there was always in such cases the possibility that claims
might be filed against the estate. It was to obviate the loss
and inconvenience incident to that condition of doubt and
uncertainty, and which are pointed out by JUDGE McSHERRY

in *Van Bibber* v. *Reese, supra,* that chapter 146 of the Acts of 1912 was enacted.

The purpose of that act was not to affect the law relating to the granting of letters of administration in cases in which administration could, as the law then existed, be granted, but to allow such letters to be granted in cases not within the scope of any existing statutes. It complemented but it did not repeal or amend section 14, article 93, Code Pub. Gen. Laws of Maryland, for while section 14 provided for the grant of letters of administration only in cases where the intestate left a "personal estate," section 109A provided for the grant of such letters where he left land but no personal estate. Where, therefore, the decedent leaves real and personal property or personal property in this State, letters of administration may be granted under section 14, article 93, *Ibid,* and where he leaves real estate only, such letters may be granted under the provisions of section 109A.

No other conclusion is possible from the plain language of the statute itself, nor is there any reason to seek to evade or escape its obvious meaning. The mischief it sought to remedy was patent, and the language in which its intention is expressed is as definite as its purpose, and it in express terms excludes from its scope cases in which the decedent died leaving personal property in this State.

Since the effect of that statute, therefore, was neither to amend nor repeal the law controlling the granting of letters of administration under the circumstances of this case, as it stood at the time the case of *Van Bibber* v. *Reese* was decided, it follows that the principles stated in that case still retain their original force and authority, and are applicable to the facts before us.

It follows from what has been said that the prayer of the petition, filed by the appellant in this case, should have been granted, and the order dismissing it must therefore be reversed.

In view of this conclusion, it becomes unnecessary to deal with the proposition that the form of notice provided in section 109 does not sufficiently comply with the requirements of section 109A, in that the former contemplates exhibiting claims to the administrator while the latter requires that they be filed in the court, since the only notice which under the facts of this case the administrator was authorized to give was that provided for in section 109, article 93, Code Pub. Gen. Laws of Maryland.

> *Order reversed and case remanded, to the end that a decree may be passed directing the immediate distribution of the fund in the trustees' hands among such persons as may be legally entitled to receive the same; costs to the appellant.*