## McHUGH ET AL. *v.* MARTIN
[No. 156, October Term, 1950.]

174

*Decided June 15, 1951.*

Before MARBURY, C. J., and COLLINS, GRASON, HENDER-SON and MARKELL, JJ.

Submitted on brief by *Omer T. Kaylor, Sr., Omer T. Kaylor, Jr., Harry E. Snyder, Harold H. Hoffman, Harvey M. Miller, John M. Colton* and *Martin V. B. Bostetter* for the appellants.

Submitted on brief by *Samuel C. Strite* and *William C. Hamilton* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

On January 27, 1938 Lewis S. Martin obtained a judgment by confession against W. W. Wolford and Mary E. Wolford, his wife, for the sum of $337.57, with costs and attorneys' fees, in the Circuit Court for Washington County. Mrs. Wolford died shortly after the entry of the judgment; Mr. Wolford died on September 25, 1938, a resident of West Virginia. Ancillary letters of administration were granted by the Orphans' Court for Washington County to the executor named in his will, and notice to creditors by publication was duly given. A warrant to appraise the real estate of the decedent was issued, and the return showed that the decedent owned seven acres of unimproved land in Washington County, of the value of $750, subject to a mortgage of $350, or a net value of $400.

In 1941, the ancillary executor filed a first and final account which showed personal estate of only $14.50. He

paid all expenses and claims filed, including undertaker's and doctors' bills in the amount of $345, leaving a balance of $478.41 due to the ancillary executor, which sum was advanced to him by the devisees. Martin did not file his claim against the estate, or make any other effort to collect the judgment until August 9, 1949 when he applied for a writ of *scire facias* to renew the judgment against the devisees and *terre*-tenants of the land of the decedent. After a demurrer to an amended writ and return had been overruled, pleas were filed and the plaintiff demurred to the pleas. Upon hearing the court sustained the demurrer and directed judgment of *fiat* to enter. From that judgment the defendants appeal.

It is conceded that the question presented is entirely one of law. The appellants contend that the failure of the plaintiff to file his judgment as a claim against the estate bars the present action. We find no merit in the contention.

A judgment creditor has "a general, statutory lien on the property of his debtor, consisting of the right to have any part of that property he may select, or all of it, sold for the payment of the judgment. And this right follows real property into the hands of any subsequent owner." *Lee v. Keech*, 151 Md. 34, 37, 133 A. 835, 836, 46 A. L. R. 1488. *Cf. Caltrider v. Caples*, 160 Md. 392, 153 A. 445, 87 A. L. R. 1500. Before the expiration of twelve years the judgment creditor is entitled to a writ of *scire facias* to renew the judgment. *O'Neill and Company v. Schulze*, 177 Md. 64, 7 A. 2d 263. Code, Article 26, Sections 20, 21; *Poe, Practice* (5th ed.) § 585 *et seq.* "Where the defendant in a judgment dies, a *scire facias* may be sued out to revive the judgment against the administrator alone to bind the assets in his hands, but where it is desired to [renew] the judgment against the land of the deceased judgment debtor the *scire facias* should also issue against the heirs and terre-tenants. * * * Assuming that where a judgment debtor dies leaving leasehold property, the judgment may be revived by a *scire facias* against his next of kin as *terre*-tenants with-

out making the administrator a party, the *scire facias* against them is a proceeding *in rem,* and the judgment obtained is not a personal judgment against them, but one subjecting the property in their possession, which belonged to the judgment debtor, to the payment of the debt * * *." *Lang v. Wilmer,* 131 Md. 215, 225, 226, 101 A. 706, 709, 2 A. L. R. 1698, and cases cited. "Where a sole defendant dies after judgment, it may be revived, and execution had against his lands, by suing out. a *scire facias* against the heirs and terre-tenants, without proceeding against the personal representatives." *Polk v. Pendleton,* 31 Md. 118, 123. See also *Tessier v. Wyse,* 3 Bland. 28, 58.

The appellants argue that since the claim was provable in the administration proceeding (Code, Article 93, Section 88) and an administrator is not bound to take notice of any claim not so filed (Code, Article 93, Sections 114, 124), the effect is to bar the subsequent enforcement of the judgment. But this does not follow. Although tax claims are provable, failure to file does not bar recovery. *Bonaparte v. State,* 63 Md. 465. Although Section 123 fixes the priority of judgments in distribution of the personal estate it was said in *Newcomer v. Beeler,* 116 Md. 647, 651, 82 A. 460, 461, that it was the "manifest intent of the law that in the payment of judgments by an administrator no regard shall be had for their status or priority as liens upon the realty". In *Zollickoffer v. Seth,* 44 Md. 359, 370 *et seq.* it was held that failure to file a claim merely exonerated the administrator, and not the estate in the hands of distributees. *Cf Colonial Trust Company v. Fidelity and Deposit Company,* 144 Md. 117, 127, 123 A. 187.

The appellants rely, however, upon Section 117, Article 93 of the Code which provides that "whenever any person, resident or non-resident of the State of Maryland, shall have been dead less than twelve (12) years, testate or intestate, leaving one or more parcels of real estate in this State, but not leaving personal estate therein as far as may be known," the Orphans' Court may grant

letters and direct notice to be given creditors, and "no claim not filed within the period specified by such notice to creditors shall thereafter be asserted against such real estate in the hands of a purchaser for value." This section was first enacted as Section 108 A, Article 93, by Chapter 146, Acts of 1912 (Section 109 A, Code of 1912) and construed by this court in *Seaman v. Seaman,* 141 Md. 1, 3, 118 A. 120. It was held that its enactment, to cover a case not covered by existing statutory provisions as to notice, did not alter the rule, previously existing, that claims not filed after notice cannot be "presented against the real estate in the hands of a purchaser in good faith for value without notice." The court cited *Van Bibber v. Reese,* 71 Md. 608, 18 A. 892, 6 L. R. A. 332, for the preexisting rule. It was there said 71 Md. at page 615, 18 A. at page 894: "The purchaser of a title, perfect on its face, for a valuable consideration, takes it discharged of every equity of which he had no notice. * * * He is, of course, charged with notice of every defect or equity or infirmity which appears in any of the muniments of that title." The pertinent language of Section 108 A (now 117) was not changed by the subsequent amendments, Chapter 591, Acts of 1924 and Chapter 288, Acts of 1939. It is true that the term "purchaser for value" does not import notice or lack of notice, but the whole purpose of the section was to provide relief to purchasers dealing with the title without notice of possible claims against the decedent. As stated in *Seaman v. Seaman, supra,* 141 Md. at page 5, 118 A. at page 121, where a decedent "left real but no personal property there could be no administration (*Grimes v. Talbert,* 14 Md. [169] 172), and therefore no forum in which claims against the estate could be filed or prosecuted except in a proceeding brought in a court of equity to subject the land to the payment of the debts of the decedent. But in the absence of such a proceeding there was always in such cases the possibility that claims might be filed against the estate. It was to obviate the loss and inconvenience incident to that

condition of doubt and uncertainty, and which are pointed out by Judge McSherry in *Van Bibber v. Reese, supra,* that Chapter 146 of the Acts of 1912 was enacted." No such relief was necessary in the case of purchasers put on notice by recorded judgments or other liens of a specific nature, and we think such liens are not the type of claims against which the statute was directed.

The appellants rely upon decisions in other states, such as *Cumberland v. Keggin,* 139 Fla. 133; 190 So. 492; *Gilden v. Bower,* 152 Fla. 733; 12 So.(2) 884; *Grace v. Lee,* 227 Mo. App. 766; 57 S. W. (2) 1095. In these cases the statutes expressly required the filing of judgment as well as other claims. We construe our statute otherwise. In the absence of express statutory requirement, the authorities generally seem to hold that the lien of a judgment survives and is enforceable against real estate of the decedent without filing claim against the estate. 2 Freeman, Judgments (5th ed.) § 1009; *Meyer v. Safe Deposit and Trust Company,* 230 Pa. 106; 79 A. 249; *Boyd v. Collins,* 70 Ia. 296; 30 N. W. 574.

The appellants also invoke the doctrine of laches, citing *Zollickoffer v. Seth, supra.* The proceeding in that case, however, was in equity. The doctrine, of course, has no application in a proceeding at law, nor do we find anything in the facts of the present case to justify its application. The fact that the distributees advanced funds to reimburse the executor in the settlement of the estate does not alter the case; they did so with constructive notice of the lien of the judgment, and could have avoided the running of interest by paying it at any time. The same thing is true of their assignees. There has been no change of position in reliance upon the delay of the plaintiff in issuing execution; the only change seems to be that the lands have appreciated in value.

*Judgment affirmed, with costs.*