WAXTER, Director *v.* MINDEL

[No. 198, October Term, 1951.]

368

*Decided June 13, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Alexander Stark, Assistant City Solicitor of Baltimore,* with whom were *Thomas N. Biddison, City Solicitor,* and *Lloyd G. McAllister, Assistant City Solicitor,* on the brief, for the appellant.

*Jacob D. Hornstein,* with whom was *Harry D. Kaufman* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from an order sustaining exceptions to the sale of real estate under a creditor's bill.

One Clara LeBon, residing at and being the owner of property at 3711 Clipper Road in Baltimore City, was the recipient of Old Age Assistance from the Department of Public Welfare for the period from January, 1936, to October, 1947. From the last mentioned date until her death on June 10, 1949, she was maintained at Spring Grove State Hospital as a charge upon the Department of Public Welfare of Baltimore City. At the time of her death the Department of Public Welfare of Baltimore City claimed that there was due it by Clara LeBon during her lifetime the sum of $4,149.36, which was the amount of money they claimed was advanced in her behalf, less certain recoveries from her life insurance policies. At the time of her death, Miss LeBon was the owner in fee simple of the property at 3711 Clipper Road.

On September 29, 1950, the appellant filed in the Circuit Court No. 2 of Baltimore City a creditor's bill in which he recited that there was owing to him as above set forth the sum of $4,149.36. That the said Clara LeBon died on June 10, 1949, leaving no personal estate. Her heirs at law were named with their addresses. He further alleged that the said Clara LeBon at the time of her death was the owner in fee simple of the property at 3711 Clipper Road, Baltimore, and that she did not leave any personal property to pay debts contracted during her lifetime. This property had been deeded to Clara LeBon and Laura LeBon as joint tenants and Laura LeBon predeceased Clara. He asked that the aforementioned property be sold for the payment of the aforementioned debt and for any other indebtedness owed by her, for the appointment of a trustee to make said sale, and for other and general relief.

After all the defendants were returned summoned, and not having answered, a decree *pro confesso* was obtained on March 2nd, 1951, referring the case to an examiner to take testimony. After the taking of testimony before the examiner a decree was signed by the chancellor ordering, among other things, the sale of the real estate of the decedent for the payment of her debts, the insufficiency of her personal estate having been proven. The decree assumed further jurisdiction over the further administration of the estate and provided for the filing of the bond by the trustee therein appointed. The chancellor also ordered the trustee to "give notice to all persons having claims against the Estate of Clara LeBon, deceased, to file their claims, properly authenticated, with the Clerk of the Circuit Court No. 2 of Baltimore City, on or before the 20th day of September, 1951, by causing a copy of this order to be published in some daily newspaper in the City of Baltimore, once a week for three successive weeks, before the 13th day of August, 1951." A certificate was filed showing the publication of this notice as ordered.

A report was filed by the trustee on August 29, 1951, reporting the sale of the property mentioned in the proceedings to Meyer Mindel, appellee here, for the sum of $4,025.00. Before the sale was ratified the purchaser, Mr. Mindel, filed exceptions to the sale on the grounds that the court was without jurisdiction to pass the decree directing the sale; that all of the parties in interest have not been named in the proceeding; that the testimony taken is hearsay and cannot be used as a basis for legal determination and decree; and for other reasons to be shown at the hearing. No testimony was taken at the hearing on the exceptions. The chancellor sustained the exceptions on the ground that "no notice to creditors of Clara LeBon, deceased, has been given as provided by Section 117 of Article 93 of the Code". From the order sustaining the exceptions to the sale and ordering the trustee to reimburse the appellee the deposit paid, the appellant appeals.

Code, Article 93, Section 117, provides as follows:

"Whenever any person, resident or non-resident of the State of Maryland, shall have been dead less than twelve (12) years, testate or intestate, leaving one or more parcels of real estate in this State, but not leaving personal property therein as far as may be known, it shall be lawful for the Orphans' Court of the county or city in which such real estate, or any part or parcel thereof, may be situate, to grant letters testamentary or of administration on the estate of such decedent, and the Court may direct notice to be given by publication to all resident or non-resident creditors of such decedent to file in said Court their claims against said decedent, which notice shall be substantially as provided in Section 116 of this Article, and the provisions of Sections 118 to 122, inclusive, of this Article shall apply. No purchaser of such real estate shall be required to accept title thereto unless such notice has been given as is author-

ized by this Section and until the period for the filing of such claims has expired; and no claim not filed within the period specified by such notice to creditors shall thereafter be asserted against such real estate in the hands of a purchaser for value. The bond required upon the grant of letters shall be in such penalty as the Court may prescribed. In case any such real estate is sold by a Court of Chancery on a bill of sale for the purpose of partition, the said Court may, in its decree for sale, provide for a notice to creditors not exceeding ninety days, which notice shall be in lieu of the notice above required, and upon the giving of this notice by the trustee appointed by the Court and upon the expiration of the ninety days provided for by the notice to creditors aforesaid, the purchaser of such real estate shall be required to accept title thereto, and no claim not filed within the period specified by such notice shall thereafter be asserted against such real estate in the hands of the purchaser at such sale, or his heirs or assigns. This section shall not apply to any real estate where any owner of the same shall have been dead for twelve (12) years or more."

This section of the article was first enacted as Chapter 146 of the Acts of 1912. By Chapter 591 of the Acts of 1924 the provisions relating to partition suits were added. By Chapter 288 of the Acts of 1939, it was made inapplicable when the deceased has been dead for 12 years or more. Article 93, Section 116, provides for the six months notice to be given in the Orphans' Court to creditors of a decedent.

The learned chancellor relied on the cases of *Van Bibber v. Reese*, 71 Md. 608, 18 A. 892, 6 L. R. A. 332, and *Seaman v. Seaman*, 141 Md. 1, 118 A. 120. In the case of *Seaman v. Seaman, supra,* it was said, 141 Md. at pages 5 and 6, 118 A. at page 121: "At the time *Van*

*Bibber v. Reese, supra,* was decided, administration could only be granted in this State in cases where the decedent died intestate, leaving personal property in this State. Where he left real but no personal property there could be no administration (*Grimes v. Talbert,* 14 Md. 172), and therefore no forum in which claims against the estate could be filed or prosecuted except in a proceeding brought in a court of equity to subject the land to the payment of the debts of the decedent. But in the absence of such a proceeding there was always in such cases the possibility that claims might be filed against the estate. It was to obviate the loss and inconvenience incident to that condition of doubt and uncertainty, and which are pointed out by Judge McSherry in *Van Bibber v. Reese, supra,* that Chapter 146 of the Acts of 1912 was enacted. The purpose of that act was not to affect the law relating to the granting of letters of administration in cases in which administration could, as the law then existed, be granted but to allow such letters to be granted in cases not within the scope of any existing statutes. It complemented but it did not repeal or amend section 14, article 93, Code Pub. Gen. Laws of Maryland, for while section 14 provided for the grant of letters of administration only in cases where the intestate left a 'personal estate,' section 109A provided for the grant of such letters where he left land but no personal estate. Where, therefore, the decedent leaves real and personal property or personal property in this State, letters of administration may be granted under section 14, article 93, *Ibid,* and where he leaves real estate only, such letters may be granted under the provisions of section 109A."

Code, Article 16, Section 242, under which the creditor's bill in this case was brought, provides as follows:

"Where any person dies, or shall have died, having any real estate in possession, remainder or reversion, and not leaving personal estate sufficient to pay his debts and costs of administration, the court, on any suit instituted by

any of his creditors, or by the executor, administrator or other personal representative of said decedent, may decree that all the real estate of such person, or so much thereof as may be necessary, shall be sold to pay his debts; and the funeral expenses of the decedent, to be allowed in the discretion of the court according to the condition and circumstances of the deceased, not to exceed three hundred dollars, except by special order of court, and provided the estate of the deceased be solvent, shall be considered the debt of said decedent, and in the distribution of the proceeds arising from any sale under this section, the claim for funeral expenses shall take priority to all claims of the common creditors of the deceased. This section to apply to all cases where the heirs or devisees are residents or non-residents, or are of full age, or infants, or of sound mind, or *non compos mentis,* and to cases where the parties left no heirs, or where it is not known whether he left heirs or devisees, or, if the heirs or devisees be unknown and if there be no heirs the State's Attorney shall appear to the bill."

This section in various forms has existed in this State since 1785.

Code, Article 16, Section 243, provides for the filing of claims against the deceased person in the clerk's office of the county in which the proceedings are instituted or where the real estate lies. It also provides: "That the certificate of the register of wills of the said county or city to the proof of such claims or distribution thereto in the orphans' court of said county or city, out of the proceeds of the personal property of said deceased debtor, shall be *prima facie* evidence of such claims, and sufficient to entitle them to distribution out of the proceeds of the real estate of said deceased debtor, unless the same be excepted to by some person interested in said estate." This section seems to contemplate that

claims may be filed either in the case in the equity court or in the orphans' court if the estate has been administered there, and, therefore, the proceedings in both courts are not necessary as contended by the appellee and found by the chancellor here. Code, Article 16, Section 246, provides that where such a suit, as in the instant case, is instituted the court may in its discretion order a sale before final decree, "if satisfied clearly by proof that, at the final hearing of the case, a sale will be ordered, and order the money arising from such sale to be deposited or invested, to be disposed of as the court shall direct by the final decree."

In the consideration of this case below, the case of *Crotty v. Browning,* 196 Md. 310, 314-317, 76 A. 2d 579, 580, apparently was not considered. In that case a creditor's bill was brought against the administratrix and the heirs at law of a deceased, who, it was claimed, was indebted to the complainant in the amount of $9,240.-00. The defendants demurred on the ground that complainant's claim was not filed against the estate, that the administratrix by law had 90 days in which to file an inventory, and until such inventory was filed, the complainant did not know the value of the personal estate and was in no position to ask any court for an order to sell the real estate. The chancellor overruled the demurrer. This Court affirmed the chancellor and the opinion by Chief Judge Marbury is so pertinent to the question before us here that we quote at length the following from that opinion: "The point raised by appellants is that the Orphans' Court has full power to administer the personal estate of a decedent, and that until such estate is administered to such an extent that it can be seen from the record that there is not sufficient personal estate to pay debts, no creditor has a right to file a bill to sell the real estate. It is further contended that such a creditor must file a claim in the Orphans' Court and, if it is denied, he must bring the suit in a law court, and that Article 16, Section 242 contemplates such action. They trace the history of this section and

reach the conclusion that the Act of 1785, Chapter 72, which was the antecedent of the present Article 16, Sections 242 and 243, was not intended to interfere with the procedure and regulations provided in Chapter 101 of the Acts of 1798 and now contained in Article 93 of the Code for the settlement of decedents' estates. There is no case which directly passes upon this rather unique argument, but it certainly is contrary to the practice of the Maryland bar. It has been the custom for a creditor to file his bill of complaint making the allegation that the personal estate is insufficient, and, after proving his claim and the insufficiency of personal assets, to get a decree under which the real estate is sold and conveyed to a purchaser. There are perhaps thousands of pieces of real estate which have been sold under this procedure, without regard to the necessity of either filing a claim in the Orphans' Court, or waiting upon the records in the Orphans' Court to show insufficiency of assets. The appellants refer to the opinion of Judge McSherry in *Van Bibber v. Reese,* 71 Md. 608, 18 A. 892. In that case a testator died leaving a considerable estate, both real and personal. His widow, who was also his executrix and his sole residuary legatee and devisee, stated an account in the Orphans' Court showing a balance in her hands amounting to $7,704.10 which went to her as residuary legatee. Shortly prior to this time, she had sold a house belonging to her husband's estate to Dr. Van Bibber. The latter contended that some creditor might turn up who could file a bill for the sale of the real estate, and therefore he could not get a merchantable title to the property. The widow brought suit against him for specific performance, and, on this state of facts, the court said that the liability of the real estate for debts was contingent upon the insufficiency of the personal estate, and after a final account had been stated in the Orphans' Court showing the personal estate as sufficient to pay debts, then there was no condition existing upon which a court of equity might decree the sale of the real estate. Real estate

could not continue indefinitely to be called upon for payment of merely possible obligations, and, while the settlement in the Orphans' Court was only *prima facie,* it did, while unimpeached, furnish notice that the real estate was not to be sold to satisfy the demands of creditors. Therefore, a *bona fide* purchaser could safely take such property and could not raise the contention made by the purchaser in that case. We are unable to find in this decision any support for the appellants. It does not hold that a creditor may not file his bill against the real estate before the estate is settled. On the other hand, it states that he may even file it after the estate is settled, and the account in the Orphans' Court shows sufficient personal assets to pay all claims, provided the Orphans' Court is in error, and that the account does not represent the true facts. It appears, therefore, that the authority of the equity court does not necessarily depend on anything done in the Orphans' Court, but is based upon the actual facts shown. The only conclusion in the case on this question is that action in the Orphans' Court will protect a *bona fide* purchaser from a suit to sell real estate, which is not brought until after the final account has been filed showing sufficient personal assets to pay the debts." After reviewing the cases of *MacGill v. Hyatt,* 80 Md. 253, 30 A. 710, 712, and *McLaughlin v. McGee,* 131 Md. 156, 101 A. 682, 684, it was further said: "It seems quite clear to us that the statute itself by its definite wording gives a creditor the right to sell the real estate of his deceased debtor if the personal estate is insufficient to pay debts, and that all such a creditor has to do is to make this allegation definitely and to prove it, and also, of course, to prove his claim. When this is done, the court has authority to decree the sale of the real estate. The appellee in the case before us has made these allegations and her bill of complaint in that respect complies with the statute. We think the chancellor was correct in overruling the demurrer and his order will be affirmed." See also *Hopper v. Harlan,* 172 Md. 152, 190 A. 841, and *McHugh v. Martin,* 198

Md. 173, 81 A. 2d 623. It therefore appears that Code, Article 93, Section 117, *supra*, does not apply to a judicial sale as the one before us in this case, and did not repeal Article 16, Section 242, *supra*.

The debt owing in this case was based upon Code (1947 Supplement), Article 70A, (Old Age Assistance), Section 17, which provides in part: "(Recovery From the Estate.) On the death of any recipient, the total amount of assistance paid under this Article shall be allowed as a claim against the estate." Section 16 of Article 70A providing for recovery from a recepient during his lifetime provides in part: "Any assistance paid before the recipient has come into possession of such property or income and in excess of his need shall be recoverable by the County Department as a debt due." Appellee contends here that because in Section 16, *supra*, the amount paid as assistance is termed a "debt due", while in Section 17, *supra*, it is termed "as a claim against the estate" that such "a claim against the estate" is not "a debt" as required under Code, Article 16, Section 242. With this contention we do not agree. In *Montgomery County Welfare Board v. Donnally*, 195 Md. 442, 73 A. 2d 505, the administratrix of the estate of Donnally claimed that the Welfare Board was without authority to sue the estate "for this claim", which was for money advanced to the deceased during his lifetime. Judge Grason said in that case: "Section 16 provides for the recovery of the difference between the property or income received by the recipient and the amount received from the Board as assistance 'as a debt due'. It does not affirmatively provide that the Board can bring suit in such case; neither does section 17 affirmatively provide that the Board can bring suit on a claim filed against the estate of one who has received assistance from the Board during his lifetime. The provision in section 16, that the amount is recoverable by the County Department as a 'debt due', and in section 17, that the amount allowed as assistance during the lifetime of a recipient 'shall be allowed as a claim against the estate',

would be perfectly idle and useless if the Board could not sue in a court of law for the debt or for the claim against a recipient's estate." Here it is plain that the words used in Section 17, *supra,* "as a claim against the estate" meant the debt which survived the death of the decedent and did not arise merely after the death. Compare *McGaw v. Gortner,* 96 Md. 489, 493, 54 A. 133. It is plain that the Old Age Assistance provided by Code, Article 70A, is not a gift to an individual but a qualified payment.

In the testimony before the examiners the only testimony as to issue, heirs, and next of kin of Clara LeBon was that given by the Chief of the Estate Division of the Department of Welfare as to what his investigation revealed on this question. The appellee claims that this testimony was merely hearsay and therefore not admissible. However, no objection was offered to this testimony. As this testimony, though hearsay, was admitted without objection, it is in the case for all purposes, and the Court must give it the same effect as if it had in fact been admissible legally. *Struth v. Decker,* 100 Md. 368, 375, 59 A. 727; *Continental Insurance Co. v. Burns,* 144 Md. 429, 437, 125 A. 232; *Manor Coal Company v. Balchumas,* 174 Md. 453, 462, 199 A. 534; *Weil v. Free State Oil Co.,* 200 Md. 62, 87 A. 2d 826, 829. The appellee has not claimed or shown that this testimony was erroneous. As Clara LeBon became by deed owner of the property as the only survivor of a joint tenancy, the question as to her heirs or next of kin had no bearing upon her ownership at the time of her death. As to the objection that the State of Maryland and the United States Government have a prorated interest in the recovery of the amount claimed, if such was the case, there was nothing to bar them from filing their claim in the case or recovery of whatever amount may be due them from the proceeds. They are not necessary parties.

Code, Article 70A, Section 17, supra, provides in part: "No such claim shall be enforced against any

real estate of a recipient while it is occupied by the recipient's surviving spouse or dependents." Appellee claims that there is nothing in this case to show that the property was not so occupied. In answer to this contention, neither the exceptant, who is the appellee, nor anyone else has proved or even claimed that it was so occupied. The order sustaining the exceptions to the sale and directing the return of the deposit will be reversed.

*Order reversed with costs, and case remanded for further proceedings.*